No. 60,768

Susan Stang, *Appellant/Cross-Appellee*, v. Paul Caragianis, *Appellee/Cross-Appellant.*

(757 P.2d 279)

Opinion filed June 3, 1988.

*Bruce A. Swenson*, of Ratner, Mattox, Ratner, Kinch & Brimer, P.A., of Wichita, argued the cause and was on the briefs for appellant/cross-appellee.

*Amy S. Lemley*, of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and *Craig W. West*, of the same firm, was with her on the brief for appellee/cross-appellant.

The opinion of the court was delivered by

McFarland, J.: This is an action seeking recovery for injuries sustained by plaintiff Susan Stang in an automobile accident. Following a jury trial, the district court sustained a motion for a directed verdict limiting plaintiff's recovery to 90 percent of her pecuniary losses on the basis of the jury's determination of comparative fault and its answer to a special question. The district court held that plaintiff had failed to meet the threshold

requirements of K.S.A. 40-3117. Plaintiff appeals from this determination.

Plaintiff was a passenger in an automobile driven by Cynthia Banks on March 23, 1984, when it collided with a vehicle driven by defendant Paul Caragianis at a Wichita intersection. The balance of the relevant facts are involved in particular issues and will be set forth as necessary for the discussion thereof.

K.S.A. 40-3117 provides:

*"In any action for tort brought against the owner, operator or occupant of a motor vehicle* or against any person legally responsible for the acts or omissions of such owner, operator or occupant, *a plaintiff may recover damages in tort for pain, suffering, mental anguish, inconvenience and other non-pecuniary loss because of injury only in the event the injury requires medical treatment of a kind described in this act as medical benefits, having a reasonable value of five hundred dollars ($500) or more, or the injury consists in whole or in part of permanent disfigurement,* a fracture to a weight-bearing bone, a compound, comminuted, displaced or compressed fracture, loss of a body member, permanent injury within reasonable medical probability, permanent loss of a bodily function or death. Any person who is entitled to receive free medical and surgical benefits shall be deemed in compliance with the requirements of this section upon a showing that the medical treatment received has an equivalent value of at least five hundred dollars ($500). Any person receiving ordinary and necessary services, normally performed by a nurse, from a relative or a member of his household shall be entitled to include the reasonable value of such services in meeting the requirements of this section. For the purpose of this section, the charges actually made for medical treatment expenses shall not be conclusive as to their reasonable value. Evidence that the reasonable value thereof was an amount different than the amount actually charged shall be admissible in all actions to which this subsection applies." (Emphasis supplied.)

In 1987, the monetary threshold required was raised to $2,000, but said amendment is inapplicable herein.

For her first issue, plaintiff contends that the threshold requirements of K.S.A. 40-3117 are affirmative defenses pursuant to K.S.A. 60-208(c) which were waived by defendant for failure to raise them before trial. K.S.A. 60-208(c) provides:

*"Affirmative defenses.* In pleading to a preceding pleading a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, *res judicata,* statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as

a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation."

At issue herein are the threshold requirements of $500 in medical treatment costs or permanent disfigurement.

Plaintiff argues the threshold requirements should fall within the 60-208(c) language "any other matter constituting an avoidance or affirmative defense" but cites no cases in support of this contention.

The threshold requirements are conditions precedent that must be met by plaintiff before nonpecuniary damages may be recovered. *Cansler v. Harrington,* 231 Kan. 66, 67-68, 643 P.2d 110 (1982). Plaintiff has the burden of proving she is entitled to recover nonpecuniary damages. *Key v. Clegg,* 4 Kan. App. 2d 267, 274-75, 604 P.2d 1212 (1980). The monetary threshold requirement must be met by the date of trial or the date the cause of action is barred by the statute of limitations, whichever occurs first. *Cansler v. Harrington,* 231 Kan. at 67-68; *Key v. Clegg,* 4 Kan. App. 2d 267, Syl. ¶ 5.

One difficulty with the argument that the threshold requirements of K.S.A. 40-3117 are affirmative defenses is that the pleading of an affirmative defense puts the burden on the defendant to prove the existence and validity of the defense, see *Tabor v. Lederer,* 205 Kan. 746, 748, 472 P.2d 209 (1970), a matter for which defendant would, at the time of his answer, have little, if any, factual basis. The defendant would not have access to the necessary medical records and reports until discovery and would not know whether plaintiff would seek additional medical treatment before trial.

In *Fitzgerald v. Wright,* 155 N.J. Super. 494, 382 A.2d 1162 (1978), the court discussed the relative burdens of plaintiff and defendant in meeting threshold requirements, as follows:

"Obviously, it is plaintiff-claimant who is privy to the knowledge and information required to determine whether the threshold has been met. Defendant is in no position to undertake affirmative proof of plaintiff's nonqualification except as he may ferret out the requisite data through discovery. Whether or not compliance with the threshold is technically considered as an essential element of a cause of action in tort since the adoption of the no fault law, nevertheless it is a precondition to recovery. Fairness and efficiency dictate that plaintiff should have the burden of proving compliance with that threshold in order to establish a

*prima facie* case. Since he has the requisite information he should be obligated to come forward with the same as part of his case. [Citations omitted.]

"To shift this burden to defendant in the guise of categorizing the exemption as an affirmative defense does not accord with the realities inherent in the litigation process. And as a corollary, since plaintiff cannot recover in the absence of evidence of compliance with the threshold requirement, he should have the burden of proof on this issue—a burden which is not onerous or unreasonable." 155 N.J. Super. at 499-500.

In *Parker v. Nakaoka*, 68 Hawaii _____, 722 P.2d 1028 (1986), a pedestrian brought a tort suit against the driver of a car which had struck the pedestrian. The jury verdict found defendant at fault. Defendant appealed. On appeal, plaintiff argued the statutory threshold requirement to maintain the cause of action was an affirmative defense which should have been pleaded and proven by the defendant. The Hawaii Supreme Court disagreed, stating:

"Although the no-fault law is silent on this point, the scheme and objectives of the law suggest that meeting the threshold requirement is an essential condition and element of Appellee's cause of action. *Murray v. Walter*, 269 N.W.2d 47 (Minn. 1978); *Fitzgerald v. Wright*, 155 N.J. Super. 494, 382 A.2d 1162 (1978). Appellee is the one who has personal knowledge and information as to whether the threshold condition is met. Therefore, it stands to reason that in order to achieve fairness and efficiency in implementing the objectives of the law, Appellee should have the burden of proving that 'the claim is one that has escaped the general abolition of tort liability decreed by HRS § 294-6.' *McAulton v. Goldstrin*, 66 Haw. 14, 18, 656 P.2d 96, 98 (1982) (Nakamura, J., dissenting). *See also Fitzgerald v. Wright*, 155 N.J. Super. at 499, 382 A.2d at 1165.

"Appellee argues that the trial judge made a finding that the threshold requirement had been met by Appellee by pointing to the trial judge's statement: 'Well, I'm going to find that allegations of permanent damages make this case one appropriate for a jury to decide.'

"We disagree. Allegations alone are not sufficient to meet the threshold requirements. Appellee must carry the burden of proving that her injury meets or exceeds the threshold requirement in question." 68 Hawaii at _____.

One of plaintiff's arguments on this issue is that a defendant should be required to alert a plaintiff if medical expenses have not reached the threshold so, presumably, the plaintiff could run up additional medical costs before trial. To state this argument points up the fallacy therein, and it will not be discussed further.

We conclude the district court did not err in holding the threshold requirements of K.S.A. 40-3117 are not affirmative defenses under K.S.A. 60-208(c). Moreover, in this case, in his answer and at the time of pretrial, defendant claimed plaintiff's

"damages and injuries are not of the nature or to the extent alleged."

For her second issue, plaintiff asks us to reconsider our decision in *Smith v. Marshall*, 225 Kan. 70, 587 P.2d 320 (1978).

The district court granted defendant's motion for partial directed verdict based on our holding in *Smith v. Marshall*. Since plaintiff now challenges the holding in that case, a review of *Smith v. Marshall* is appropriate. In *Smith*, the plaintiff's right leg was injured when it was caught between defendant's vehicle and a parked car. The resultant injury was a discoloration of an area approximately one and one-quarter of an inch by one-half inch in dimension. Plaintiff had not received medical treatment sufficient to meet the statutory monetary threshold of K.S.A. 40-3117. He claimed, however, the discolored area constituted a permanent disfigurement, thus satisfying one of the non-monetary threshold criteria. 225 Kan. at 71-72. Defendant's motion for summary judgment was sustained. The trial court ruled, as a matter of law, that plaintiff's discoloration/scar was not a permanent disfigurement within the meaning of K.S.A. 40-3117. The Court of Appeals, in a split decision, vacated the summary judgment holding that whether it was a permanent disfigurement was a matter of fact to be decided by the trier of fact. *Smith v. Marshall*, 2 Kan. App. 2d 213, 214, 577 P.2d 362 (1978). The appellate court reasoned that once the existence of a scar was established, whether or not it was a permanent disfigurement was a matter of fact for the trier of fact to decide. 2 Kan. App. 2d at 216. Chief Judge Foth dissented, reasoning that, as a matter of law, the injury was neither a "serious" nor "significant" disfigurement, conditions he believed reflected the legislature's intent. We granted review and in *Smith v. Marshall*, 225 Kan. 70, adopted Chief Judge Foth's dissenting opinion as follows:

" 'Where my colleagues and I part company in this case is in our interpretation of K.S.A. (now 1977 Supp.) 40-3117, the threshold provision of our so-called "no-fault" insurance law. The majority finds no requirement in our statute that a permanent disfigurement be "significant" or "serious"; I believe those terms are implied by the statute read as a whole. The majority thinks that to read such qualifying adjectives into the statute would be to rewrite the statute; I believe such a reading is required by the manifest legislative intent.

" 'The nature of the claimed disfigurement is not seriously in dispute. Plain-

tiff's treating chiropractor, when asked to point out the injury to the court below, responded:

"A. That is a scar right here. If you hold it just right you can pull it and see a scar."

" 'The trial judge made a personal inspection of plaintiff's leg and described his observations for the record:

". . . The record should show that the Court did observe the right leg of Mr. Smith. The parties should also note the Court's observations, the Court did run his finger on the leg in the area that Dr. Counselman described. And the Court's observation, from just a visual and from a touch indication, was that there was no scarring as we would understand broken skin with a lesion over the scarring. In other words, it was a smooth feeling. That the area that the Court did observe was ascertainable, discernible, it being more of a, at least to the visual view of the Court, it was more of a discoloration of Mr. Smith's leg. The record should show that Mr. Smith is black. The area in question was darker. It was more of a dark brown area. It was about an inch and a quarter in length and in the middle point running North and South on the leg toward the center, as Dr. Counselman indicated, and toward the center of the area. It extended to, perhaps, about a half an inch. But I would say it would be East and West across the leg and about an inch and a quarter long. Now that is what the visual observation indicates. . . ."

" 'In granting summary judgment for defendant the court wrote:

"It is true that the extent of injury or whether scarring is permanent or not is usually a jury question. But here, it is a matter of law that plaintiff must qualify as to one or more of the threshold criterion to be able to maintain this action under the no-fault doctrine.

"The Court finds that the area of injury to plaintiff is neither unsightly, misshapen or in any manner a deformity nor does it in any way impair the beauty, symmetry or appearance of plaintiff's leg. It is merely an innocuous discoloration of the right leg extending approximately one and one-fourth inches long and approximately one-half inch in width at its widest point. The Court finds as a matter of law plaintiff does not suffer from permanent disfigurement."

" 'To me the trial court's findings are persuasive. While courts should not rewrite a statute where its language and meaning are clear, I find other principles of statutory construction applicable here. First, remedial legislation should be "liberally construed to effectuate the purpose for which it was enacted." *State, ex rel., v. Anderson,* 195 Kan. 649, Syl. ¶ 3, 408 P.2d 864 (1965). See also, *Young v. Barker,* 185 Kan. 246, 342 P.2d 150 (1959); *Wheeler v. Wheeler,* 196 Kan. 697, 414 P.2d 1 (1966). Second, where a literal construction would defeat the legislative purpose, a statute should be construed according to its reason and spirit. *State v. Dumler,* 221 Kan. 386, Syl. ¶ 2, 559 P.2d 798 (1977); *Kansas Commission on Civil Rights v. Howard,* 218 Kan. 248, Syl. ¶ 2, 544 P.2d 791 (1975). Such a construction may include the supplying of omitted terms when necessary. *Parker v. Continental Casualty Co.,* 191 Kan. 674, Syl. ¶ 4, 383 P.2d 937 (1963); *Wolf v. Mutual Benefit Health & Accident Association,* 188 Kan. 694, 702, 366 P.2d 219 (1961).

" 'Applying those principles to K.S.A. 40-3117, we find that the legislature has prohibited tort actions for pain, suffering and other nonpecuniary damages

arising out of an automobile accident unless the plaintiff's injury meets one of eight criteria: it must (1) require at least $500 in medical expenses; (2) result in permanent disfigurement; (3) be a fracture of a weight-bearing bone; (4) be a fracture which is compound, comminuted, displaced or compressed; (5) involve loss of a body member; (6) be permanent; (7) result in permanent loss of a bodily function; or (8) result in death.

" 'While some of these characteristics (death, in particular) obviously have more grave connotations than others, to my mind they all require an injury of some severity. To say that no matter how trivial the "disfigurement" it deserves to be ranked with the other seven threshold criteria seems to me to run contrary to the implicit but clear intent of the drafters of this legislation. Under the maximum *noscitur a sociis* (it is known from its associates), the term "permanent disfigurement" should be read as having the same general qualities and characteristics as its fellow terms. (*Cf., Farm Bureau Mutual Ins. Co. v. Carr*, 215 Kan. 591, 596, 528 P.2d 134 [1974].) In each of the other terms those qualities include an injury of substance; a disfigurement, to rank with them, should also be of substance.

" 'In determining the legislature's purpose in enacting this statute we are not without guidance. In *Manzanares v. Bell*, 214 Kan. 589, 522 P.2d 1291 (1974), our Supreme Court spoke to the issue directly and forcefully:

". . . *One of the obvious purposes of the Legislature in limiting recovery under the threshold provision was clearly to eliminate minor claims for pain and suffering*. The Legislature could reasonably have thought that the number of such cases (see DOT study) was largely connected with *exaggerated claims for pain and suffering in instances of relatively minor injury.* Our prior decisions are to the effect that subjective complaints of pain and suffering defy accurate monetary appraisal. (*Domann v. Pence*, 183 Kan. 135, 325 P.2d 321; *Henderson v. Kansas Power & Light Co.*, 188 Kan. 283, 362 P.2d 60.) *In addition, minor 'nuisance' claims were often overpaid,* and as stated in *Pinnick v. Cleary*, [360 Mass. 1, 271 N.E.2d 592, 610], ' . . . *It was clearly proper for the Legislature to conclude that the benefits of compensating an injured person for relatively minor pain and suffering, which as such entails no monetary loss did not warrant continuation of the practice when balanced against the evils it had spawned.*' " (pp. 610-11. Emphasis added.)

" 'In this case we have the residual effect of a bruised shin, consisting of an "innocuous discoloration" an inch-and-one-quarter long by one-half inch at its widest. Assuming it to be permanent, I cannot believe it is the type of "disfigurement" intended by the legislature to support this plaintiff's claim for $100,000.00 in damages. It seems to me this is a prime example of those "exaggerated claims for pain and suffering in instances of relatively minor injury" the Court recognized in *Manzanares,* and just the type of "minor nuisance" claim the legislature intended to eliminate.' " 225 Kan. at 74-76.

Plaintiff herein argues that this court in *Smith* improperly construed the permanent disfigurement language of K.S.A. 40-3117 to require the same to be "serious or significant."

The majority of the courts which have been called upon to determine whether a particular disfiguring injury is sufficient to achieve the threshold of tort liability have held that the disfigurement must be significant as well as permanent. See Annot., 33 A.L.R.4th 767, §§ 2, 5, and cases cited therein. Our decision in *Smith* was equally clear in echoing the legislative intent behind the threshold requirements of K.S.A. 40-3117, that is, " 'to eliminate minor claims for pain and suffering.' " *Smith v. Marshall*, 225 Kan. at 76 (quoting *Manzanares v. Bell*, 214 Kan. 589, 522 P.2d 1291 [1974]). In *Manzanares*, we stated the Kansas Automobile Injury Reparations Act "is a legislative response to a growing public demand for a change in the manner society deals with the enormous legal, social and economic problems resulting from motor vehicle accidents." 214 Kan. at 601.

Further, the Kansas Legislature has not changed the statute in the wake of the *Smith* decision, a fact which is implicative of approval of the statutory construction contained therein. *Smith* was decided in 1978. In 1987, the legislature amended K.S.A. 40-3117 to provide that a plaintiff must incur $2,000 or more in medical treatment to recover nonpecuniary damages, thus quadrupling the monetary threshold requirement. See L. 1987, ch. 173, § 7. This amendment reinforces Judge Foth's reasoning that the legislature intended all the threshold requirements of K.S.A. 40-3117 to " 'require an injury of some severity.' " *Smith v. Marshall*, 225 Kan. at 76.

After carefully considering this issue, we conclude that the rationale of the *Smith* decision is sound and we adhere thereto.

For her third issue, plaintiff contends the district court improperly applied *Smith v. Marshall*.

In the case before us, plaintiff received a soft tissue injury to her cheek. No stitches were required. At the hospital emergency room, she was advised to apply an ice pack to her cheek upon her return home. Later, a dermatologist observed a small nodule on her cheek from which plaintiff advised a small piece of glass had been removed. An antibiotic was prescribed. The nodule healed well. Later, plaintiff saw a plastic surgeon who advised against surgery. The surgeon diagnosed her cheek injury as "a subcutaneous scar" caused by a subcutaneous split of fatty tissue underneath the skin at the time of the accident, and subsequent

healing. The subcutaneous scar was firm to the touch. It was located along the right naso-labial fold, along the crease between the nose and cheek, on the right side. The scar was approximately five centimeters in length and one centimeter in width.

At trial, plaintiff presented evidence of a recurrent rash on her cheek. Plaintiff's plastic surgeon testified the rash was unrelated to the cheek injury except to the extent that plaintiff's rubbing of the area may have irritated the skin. The surgeon further testified as follows:

"Q.  [By attorney for defendant.] Okay. The last time you examined her was three months ago, on December the 12th of 1986. Had her subcutaneous injury from the accident gotten better between April 19th, 1985, and December the 12th of 1986?
"A.  Yes.
"Q.  And when you last examined her three months ago, there still was no visible defect from a conversational distance, from about three feet, was there, doctor?
"A.  No.
"Q.  Okay, and there still, as of December 12th, 1986, there is no visible scar or injury on the surface of her skin, resulting from this accident?
"A.  That is correct."

And:

"Q.  [By attorney for defendant.] You saw the patient on December 12, 1986. Right?
"A.  That is correct.
"Q.  At the time — that was the last time you saw [her]. Correct?
"A.  Until today.
"Q.  Until today, and at that time on December 12, 1986, would you fairly characterize her subcutaneous scar as a permanent disfigurement?
"A.  No, I would not."

The record amply supports the finding that the claimed disfigurement was neither serious nor significant within the meaning of K.S.A. 40-3117. Additionally, of course, the finder of fact had the opportunity to observe the plaintiff. The claimed error in having the jury determine this issue is discussed in the next issue.

For her fourth issue, the plaintiff claims it was error for the district court to submit a special question to the jury relative to the claimed disfigurement.

The following special question was submitted to the jury:

"Do you find the permanent disfigurement that Susan Stang complains of to be significant or serious?"

The jury answered in the negative.

In *Smith v. Marshall*, 225 Kan. 70, we approved the district court's determination, as a matter of law, that a particular permanent disfigurement did not meet the threshold requirement of K.S.A. 40-3117. That does not mean that all such determinations must be determined as a matter of law. The trial court obviously had reservations about whether or not the threshold requirement had been met and gave the benefit of the doubt to the plaintiff in submitting the question to the jury. We find no error in this regard.

For her fifth issue, plaintiff contends she met the $500 medical expense threshold of K.S.A. 40-3117 as a matter of law.

Plaintiff had $419.94 in medical expenses. The court allowed other non-medical pecuniary damages in the amount of $113.40 for a total pecuniary loss of $533.34. The jury found defendant to be 90 percent at fault—so the trial court awarded $480.01 (based on 90 percent of $533.34).

K.S.A. 40-3117 provides, in pertinent part, as follows:

"Any person receiving *ordinary and necessary* services, normally performed by a nurse, from a relative or a member of his household shall be entitled to include the reasonable value of such services in meeting the requirements of this section." (Emphasis supplied.)

Plaintiff argues she met the $500 threshold based on services performed by her husband. She relies upon *Key v. Clegg*, 4 Kan. App. 2d 267, 604 P.2d 1212, *rev. denied* 227 Kan. 927 (1980). In *Key v. Clegg*, Brian Key received a head injury in an auto accident and sued to recover nonpecuniary damages. Key, however, failed to meet the $500 statutory threshold requirement. He proved $491.08 in medical expenses, falling $8.92 short of the threshold. 4 Kan. App. 2d at 268-71. The Court of Appeals found Key's mother, who spent a day and a night, on the doctor's orders, administering to her son by waking him every hour and giving him medicine, and who followed up with massage treatment for a year, had performed ordinary and necessary services normally performed by a nurse. 4 Kan. App. 2d at 273-74. The major issue, however, was the *value* of the mother's services, since no evidence as to value had been received by the court. The Court of Appeals concluded the evidence of the mother's

services, which were substantial, were "such that a judge or jury, or anyone else considering them, would necessarily conclude from common knowledge that they had a value far in excess of $8.92 necessary to meet the monetary threshold requirements." 4 Kan. App. 2d at 274-75. *Key v. Clegg*, then, turned, not on the issue of ordinary and necessary services normally performed by a nurse, but on the value of those services.

In the case before us, plaintiff left the emergency room holding an ice pack to her cheek. Temporary use of the ice pack was the only medical instruction plaintiff received. Plaintiff presented no evidence that her husband performed any services for her of a type ordinarily performed by a nurse. Yet she claims, on the basis of *Key*, that, as a matter of law, the court should have found the husband performed medical services for her which supplied her the $80.06 shortfall on the $500 medical threshold. Plaintiff's counsel admitted to the trial court that no evidence relative to services performed by the husband had been presented. We find no error in the trial court's refusal to add any sums to plaintiff's medical expenses for medical services performed by her husband.

For her sixth issue, plaintiff contends that the trial court's judgment deprived her of compensation for certain pecuniary damages.

Instruction No. 15 to the jury stated:

"You shall determine the amount of the damages sustained by the plaintiff. You should allow her such amount of money as will reasonably compensate her for her injuries and losses resulting from the occurrence in question, including any of the following shown by the evidence:

 a. Pain, suffering, disabilities, *loss of earning capacity*, and any accompanying mental anguish suffered by plaintiff to date, and those she is reasonably certain to experience in the future;

 b. The reasonable expenses of necessary medical care, hospitalization, ambulance expenses, prescriptions and treatment received, and medical expenses reasonably certain in the future.

"In arriving at the amount of your verdict you should consider plaintiff's age, condition of health before and after, and the nature, extent and duration of the injuries. For items such as pain, suffering and mental anguish, there is no unit value and no mathematical formula the Court can give. You should award her such sum as will fairly and adequately compensate her. The amount to be awarded rests within your sound discretion.

"The total amount of your verdict may not exceed $75,000.00, the amount of plaintiff's claim." (Emphasis supplied.)

The jury found plaintiff's damages to be $17,500. Loss of earning capacity is an element of pecuniary damage. Plaintiff argues that under the evidence a part of the $17,500 had to be for loss of this aspect of pecuniary damage, and the district court deprived her of this element of damage·by its entry of judgment.

Plaintiff's claim for loss of earning capacity relates wholly to damage to her future modeling career. Defendant argues on his cross-appeal, as he did at trial, that this claim should never have been submitted to the jury as the whole matter of plaintiff's future as a model was too speculative. Clearly, plaintiff's testimony was that she aspired to be a professional model. There was no expert testimony that: (1) such an aspiration was ever realistic for the plaintiff; (2) plaintiff's claimed disfigurement impaired her realization of that dream; or (3) what financial impact the claimed disfigurement might have on any income from modeling. At the time of the accident, plaintiff was employed as a retail sales clerk. She is a married, attractive, 25-year-old mother of two children. Plaintiff apparently believes the accident has impaired her dream of being a model and has not actively pursued a career in modeling after the accident.

Damages are not recoverable where they are too conjectural or speculative to form a basis for measurement. *Morris v. Francisco,* 238 Kan. 71, 77, 708 P.2d 498 (1985); *Hoard v. Shawnee Mission Medical Center,* 233 Kan. 267, 277, 662 P.2d 1214 (1983); *Buck v. Miller Amusement Co.,* 166 Kan. 205, 209, 200 P.2d 286 (1948); *Johnson v. Baker,* 11 Kan. App. 2d 274, 276, 719 P.2d 752 (1986). In *Morris v. Francisco,* 238 Kan. 71, we discussed this rule as follows:

"Awards for objective elements of damage, such as loss of past and future income, . . . are grounded in mathematical calculation. As noted in 18 A.L.R.3d 88, Evidence—Impaired Earning Capacity § 2[a], p. 97:
'[D]amages for impairment of earning capacity cannot be recovered in a personal injury action where there is no evidence of such impairment or no evidence from which damages therefor can be calculated. Although the evidence need not show conclusively or with absolute certainty that earning capacity has been impaired, mere conjecture or speculation does not warrant an award of damages therefor in personal injury actions. All damages, however, are subject to some uncertainties and contingencies, especially those that seek to compensate for future injuries.

Accordingly, most courts hold that in order to warrant a recovery for impairment of earning capacity in personal injury actions, the impairment of earning capacity must be shown with reasonable certainty or reasonable probability, and there must be evidence which will permit the jury to arrive at a pecuniary value of the loss.'

. . . .

"Thus, we see the extent of the diminution or impairment of earning capacity is a relevant consideration and is arrived at by comparing what the injured party was capable of earning at or before the time of the injury with what the party is capable of earning after the injury. This is recovery for injury to the capacity to earn and is relevant in calculating a party's loss of earnings." 238 Kan. at 78-79.

We conclude that it was error to submit any claim to the jury based upon any loss of earning capacity as a model. This claim was speculative. No evidence was introduced upon which an award for damages could be based. Under the circumstances herein, however, its submission is not reversible error as the jury's finding as to damages suffered was not viable due to plaintiff's failure to meet the threshold requirements of K.S.A. 40-3117 and the trial court's entry of a directed verdict.

For her final issue, plaintiff contends she is entitled to recover the costs of this appeal.

She relies upon Rule 7.07(b) (1987 Kan. Ct. R. Annot. 35), which provides:

"If the court finds that an appeal has been taken frivolously, or only for purposes of harassment or delay, it may assess *against an appellant* or his counsel, or both, the cost of reproduction of the appellee's brief and a reasonable attorney's fee for the appellee's counsel. The mandate shall then include a statement of any such assessment, and execution may issue thereon as for any other judgment, or in an original case the clerk of the appellate courts may cause an execution to issue." (Emphasis supplied.)

Plaintiff is the appellant and the rule is wholly inapplicable to her. This issue is without merit.

Having carefully considered all issues raised including those not specifically referred to in this opinion, we find no reversible error herein.

The judgment is affirmed.