(955 P.2d 635)

No. 78,120

KATHRYN R. MILLER, *Appellee*, v. CESAR T. MILLER, *Appellant*.

—

Opinion filed March 27, 1998.

*James B. Peplinski* and *Robert A. Levy*, of Law Office of Robert A. Levy, of Garden City, for appellant.

*H. David Starkey*, of Starkey & Gatz, of Colby, for appellee.

Before KNUDSON, P.J., ELLIOTT and GERNON, JJ.

KNUDSON, J.: This is a tort action brought by Kathryn R. Miller (Kathy) against Cesar T. Miller (Cesar) for damages sustained in a collision between two vehicles. It is a coincidence that the litigants have the same surname. For ease of understanding, we will use their first names throughout this opinion. At the conclusion of all evidence, the district court granted a partial directed verdict in favor of Cesar regarding any nonpecuniary losses, concluding that the evidence did not show a "permanent injury within reasonable medical probability." K.S.A. 40-3117. Kathy appeals, contending as she did at trial that vitreous floaters in her left eye do constitute significant, permanent injury.

Kathy, age 44, was injured on June 17, 1993, when her car was struck from the rear by a vehicle driven by Cesar. She hit her head on the headrest and windshield. Initially, Kathy showed no signs of significant injury. However, over the next several weeks, Kathy testified "little gray things started to appear like muddy water" in her eyes. The condition was constant and affected Kathy's ability to use her computer at work. Her night vision was also adversely affected.

On July 14, 1993, Kathy's optometrist, Larry L. Washburn, D.O., diagnosed her as having vitreous floaters in her left eye. Washburn

testified that patients with floaters "see things or spots, spider webs, or little things dancing in front of their eye as they move their eye back and forth." He explained that floaters occur when the liquid center of the eye, known as the vitreous humor, becomes detached from the back of the eye. Pockets then form at the back of the eye, which trap debris. The tiny debris then project shadows on the back of the eye which appear as floaters.

Washburn testified he saw no floaters in a pre-accident eye examination of Kathy conducted on April 5, 1993. He also noted that Kathy was not complaining about any floaters prior to the accident. Dr. Washburn's opinion, based upon reasonable medical probability, was that the floaters could have been caused by the head trauma from the car accident. However, he also acknowledged that floaters can spontaneously occur as a normal part of the aging process.

Kathy was referred to Dr. Kenneth Hovland, an ophthalmologist. Dr. Hovland confirmed the existence of the floaters and testified they could adversely affect Kathy's night vision and be otherwise annoying. Although Hovland acknowledged that the floaters could have been caused by the trauma of the collision, he would not give such an opinion within reasonable medical probability because there was no blood found in the vitreous humor upon examination.

At the conclusion of Kathy's case in chief, Cesar moved for a directed verdict, contending there was insufficient medical evidence to establish that the vitreous floaters were caused by the impact of the collision. The district court denied Cesar's motion, concluding that based upon the evidence presented, the issue of causation was a question of fact for the jury to resolve.

Cesar's attorney then moved for directed verdict on the issue of nonpecuniary damages. The district court granted this motion, concluding that Kathy had failed to meet the threshold requirement of "permanent injury within reasonable medical probability." See K.S.A. 40-3117. The district court also granted a directed verdict to Kathy on the issue of fault, concluding Cesar was 100% at fault. Because the parties had stipulated to Kathy's medical expenses and she claimed no pecuniary damages, the district court excused the

jury and awarded Kathy a judgment for her medical expenses and court costs totaling $1,030.60.

Kathy has filed a timely notice of appeal, contending that the district court erred in granting the directed verdict for nonpecuniary damages. We note Cesar did not cross-appeal from the district court's denial of directed verdict on the causation issue; thus, the issue of causation is not before us. The narrow question on appeal is whether Kathy's vitreous floaters constitute a serious or significant "permanent injury within reasonable medical probability."

" 'In ruling on a motion for directed verdict pursuant to K.S.A. 60-250, the court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought and where reasonable minds could reach different conclusions based on the evidence the motion must be denied and the matter submitted to the jury. This rule must also be applied when appellate review is sought on a motion for directed verdict.' " *Simon v. National Farmers Organization, Inc.*, 250 Kan. 676, 683, 829 P.2d 884 (1992) (quoting *Turner v. Halliburton Co.*, 240 Kan. 1, Syl. ¶ 1, 722 P.2d 1106 [1986]).

We are not aware of any Kansas case that has specifically addressed the meaning of "permanent injury within reasonable medical probability" as that phrase is used in K.S.A. 40-3117. However, our Supreme Court has considered the permanent disfigurement provision of K.S.A. 40-3117 on two occasions, and its reasoning is helpful in construing the phrase now under consideration.

In *Smith v. Marshall*, 225 Kan. 70, 76, 587 P.2d 320 (1978), the Supreme Court reversed the Court of Appeals ruling in *Smith v. Marshall*, 2 Kan. App. 2d 213, 577 P.2d 362 (1978), that a permanent disfigurement under K.S.A. 40-3117 need not be serious or significant. The Supreme Court adopted the entire dissent of Chief Judge Foth that a permanent disfigurement must be serious or significant in order for the plaintiff to receive nonpecuniary damages. See 225 Kan. at 74-76; *Marshall*, 2 Kan. App. 2d at 216-19 (Foth, C.J., dissenting).

The Supreme Court's ruling in *Marshall* was followed in *Stang v. Caragianis*, 243 Kan. 249, 253, 757 P.2d 279 (1988). In *Stang*, the appellant sought to have the holding in *Marshall* overturned. The Supreme Court declined and went on to hold that a 5-centi-

meter scar on the fold of skin between the plaintiff's nose and cheek was not a serious or significant permanent disfigurement for purposes of K.S.A. 40-3117. 243 Kan. at 257. Significantly, the court also noted that in close cases where the district court is unsure if the disfigurement is serious, the seriousness or significance issue may be submitted to the jury for determination. 243 Kan. at 258.

. In light of the reasoning and holdings in *Marshall* and *Stang,* we conclude the permanent injury provision of K.S.A. 40-3117 must be interpreted to require an injury that is not only permanent within a reasonable medical probability, but also serious or significant.

In the case now on appeal, the district judge gave the following explanation for granting a directed verdict to Cesar on the non-pecuniary damages issue:

"This case . . . bothers me a little bit in that I can understand from the plaintiff's standpoint that this definitely is an annoyance, and I can see that. The problem that I have is based on the evidence as presented, and particularly the medical evidence. I'm not sure the terms of [K.S.A. 40-3117] are met, and I say that also in light of *Smith v. Marshall.* The only exception, I agree, that may apply is the permanent injury exception, and that's where we get into this discussion about beyond a reasonable medical probability, which neither of the doctors understood and I'm not sure I understand quite frankly, but they certainly were not able to be very definite in regards to the answer to that question. They said yeah, it's possible, and certainly it is. It's also possible that the aging process could cause it, it's also possible that somebody 15 years of age could have a condition similar to this, I think.

"I think I don't have any choice under [K.S.A. 40-3117] but to find that the threshold has not been met and that there is not a permanent injury, and certainly not a permanent injury that would be considered a significant injury, although if it were me, I probably would consider it a significant injury because it would be a great annoyance."

We have two problems with the district court's reasoning and conclusion. First, the district court had previously concluded, when ruling on the first directed verdict motion of Cesar, that the medical evidence on causation required that the issue of causation be submitted to the jury for determination. Some of the language used by the district court to support the directed verdict on nonpecuniary damages flies in the face of its previous ruling. Second, the

evidence in this case, viewed in the light most favorable to Kathy, precludes a directed verdict that there was not any permanent injury.

Kathy testified the vitreous floaters impaired her night vision such that she can no longer drive after dark. She also stated it made working on a computer at her job difficult because sometimes she cannot see clearly through the floaters.

Dr. Washburn testified on direct examination that within a reasonable optometric probability, he was of the opinion Kathy's vitreous humor separation and the resulting floaters were caused by the automobile collision. On cross-examination, he backed off from his opinion somewhat and stated it was a possibility the floaters resulted from the collision. He also testified the floaters in Kathy's left eye are permanent and constitute an untreatable condition. While he characterized the floaters as an annoyance, he also testified they could adversely affect Kathy's ability to drive.

Dr. Hovland testified that vitreous humor separation that results in floaters is permanent and may be caused by trauma. He also stated that impaired night vision was a possible result of floaters and that there was no cure for this impairment except surgery, which is not commonly performed due to substantial risks. Dr. Hovland acknowledged that the floaters could interfere with Kathy's reading of a computer screen at work. He also testified there was the possibility of improvement if the vitreous floaters moved out of her central vision, but that Kathy's condition was stable, making such movement unlikely.

We find that the medical testimony by Doctors Washburn and Hovland established a prima facie case of "permanent injury within reasonable medical probability" within the meaning of K.S.A. 40-3117. The evidence is sufficient to raise a fact issue for the jury as to whether Kathy's complaints, together with the unquestioned permanent condition of vitreous floaters, is serious or significant. Her claimed injury and the resulting impairment is of far greater consequence than a bruised shin or a small scar. A jury should decide causation, whether the injury is serious or significant, and the merits of her claims. We conclude the district court erred in

granting Cesar's motion for a directed verdict on the issue of non-pecuniary damages.

Reversed and remanded for new trial.