(26 P.3d 83)

No. 85,529

MICHAEL C. SMITH, *Appellee*, v. KIMBERLY A. FISHER, *Appellant*.

Opinion filed June 29, 2001.

*Paul Hasty, Jr.*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, for the appellant.

*David W. Andreas*, of Winfield, for the appellee.

Before BEIER, P.J., PIERRON, J., and BUCHELE, S.J.

*Per Curiam:* Kimberly Fisher appeals the judgment in favor of Michael Smith for noneconomic losses suffered as the result of an automobile accident.

Smith and Fisher were involved in an automobile accident. The accident report prepared by law enforcement officers indicated the vehicles were traveling in opposite directions when Fisher crossed into Smith's lane. The vehicles collided and Jeremy Reid, Smith's stepson and passenger, was taken to the hospital. Smith accompanied him to the hospital but was not himself treated or admitted.

Smith and Reid filed suit against Fisher, claiming she had been negligent in the operation of her vehicle. They asked for a monetary judgment in Reid's favor for $50,000 and in Smith's favor for $100,000. The case was tried to a jury.

Smith testified he banged his knees on the dashboard of his truck during the collision. He testified that at the moment of impact, he had too much adrenaline going through his system and was too concerned about Reid to feel any pain, but the following morning his knees were swollen and bruised. Smith was working as a plumber and testified he had trouble at work the day after the accident. He went home for a time that day and wrapped his knees with ice.

Smith testified he had no problems with his knees prior to the accident. He was involved in an accident in 1983 where his knees were run over by a vehicle, but he claimed there were no residual effects from that accident. Smith continued to work after the accident and until trial with no restrictions, although he had to do exercises at work to alleviate the pain. He also testified to being able to do fewer activities with his children and around his home.

Two days after the accident, Smith visited Dr. Alvin Bird, who prescribed medication to help with the swelling and ordered X-rays, which showed no broken bones. Approximately 1-1/2 weeks after the accident, the bruising and swelling had subsided, and Bird ordered different medication that would not upset Smith's stomach.

Bird referred Smith to Dr. Bradley Bruner, who diagnosed possible ligament and cartilage damage. He also prescribed medication in addition to physical therapy. Subsequent examinations revealed continuing pain. Bruner testified it was probable that Smith would someday need to have orthoscopic surgery, costing between $8,000 and $10,000. Bruner's opinion was that Smith's knee condition was caused by the collision with Fisher's vehicle. Bruner diagnosed Smith as suffering from a 3% permanent disability in both knees. He also testified on cross-examination that it would not be unusual for plumbers or people who spend a lot of time working on their knees to develop similar problems.

The jury found Fisher to be 90% responsible for the accident and Smith 10% responsible. The jury awarded medical expenses to Reid as stipulated by the parties in the amount of $940.47. This was the only award to Reid. The jury awarded damages to Smith as follows: (1) noneconomic loss to date—$15,000; (2) future noneconomic loss—$0; (3) economic loss to date—$293.76; (4) medical expenses to date—$1,684.60; and (5) future medical expenses—$0. The district court entered judgment in Smith's favor for $15,280.52.

Fisher objected to the journal entry, claiming Smith did not meet the threshold requirements set out in K.S.A. 40-3117 for recovering noneconomic losses. The district court ruled that Smith met the threshold requirement by his "proof of permanent loss of

bodily function relying on the testimony of Dr. Bruner of a 3-percent disability in each knee. The statute clearly provides for that. It's a matter for determination by the jury."

Fisher contends the district court erred as a matter of law in entering a judgment against her for 90% of the $15,000 the jury awarded for past noneconomic loss. She claims the judgment was not permitted under K.S.A. 40-3117. An appellate court's standard of review on questions of law is unlimited. *NEA-Coffeyville v. U.S.D. No. 445*, 268 Kan. 384, 386, 996 P.2d 821 (2000).

K.S.A. 40-3117 is part of the Kansas Automobile Injury Reparations Act. The statute sets out the conditions precedent to recovering damages for pain and suffering in tort actions:

"In any action for tort brought against the owner, operator or occupant of a motor vehicle or against any person legally responsible for the acts or omissions of such owner, operator or occupant, a plaintiff may recover damages in tort for pain, suffering, mental anguish, inconvenience and other non-pecuniary loss because of injury only in the event the injury requires medical treatment of a kind described in this act as medical benefits, having a reasonable value of $2,000 or more, or the injury consists in whole or in part of permanent disfigurement, a fracture to a weight-bearing bone, a compound, comminuted, displaced or compressed fracture, loss of a body member, permanent injury within reasonable medical probability, permanent loss of a bodily function or death. Any person who is entitled to receive free medical and surgical benefits shall be deemed in compliance with the requirements of this section upon a showing that the medical treatment received has an equivalent value of at least $2,000." K.S.A. 40-3117.

Fisher argues Smith did not suffer an injury requiring medical treatment having a reasonable value of $2,000 or constituting any of the injuries listed in the statute.

Smith concedes he did not meet the $2,000 medical treatment threshold. His contention is that he suffered a permanent disability, falling under the "permanent loss of a bodily function" provision of K.S.A. 40-3117. Smith's counsel stated at the hearing on the motion to settle the journal entry, "What we're relying on is permanent injury. He had permanent injury. There's testimony he had 3-percent disability in both knees. That's what we're relying on."

Smith argues, and the district court accepted as a basis for its decision, that the jury made this determination based on Bruner's

testimony that he suffered from a permanent 3% disability in both knees.

It does not appear that any Kansas cases have addressed the meaning of "permanent injury within reasonable medical probability." *Miller v. Miller*, 25 Kan. App. 2d 29, 31, 955 P.2d 635 (1998). Cases have indicated, however, that permanent injuries must be serious or significant to meet the requirements of the statute, and in close cases, the seriousness or significance issue may be submitted to a jury. 25 Kan. App. 2d at 31-32. In *Miller*, permanent vitreous floaters in the left eye were held to establish a prima facie case of "permanent injury" within the meaning of K.S.A. 40-3117. A 3% permanent disability in both knees probably does constitute a permanent injury. Our difficulty here is that neither Smith, Fisher, nor the district court thought to ask the jury in the instructions whether Smith had suffered a permanent injury.

The requirements of K.S.A. 40-3117 are conditions precedent that must be met by the plaintiff before noneconomic damages may be recovered, not an affirmative defense the defendant is required to raise prior to trial. *Stang v. Caragianis*, 243 Kan. 249, 251, 757 P.2d 279 (1998). If there is any disagreement on the issue of whether the conditions of K.S.A. 40-3117 have been met, there should generally be appropriate instruction to the jury to resolve the issue.

From the verdict here, it is not clearly provable that the jury thought there was a permanent injury, as it found no future noneconomic loss, nor any further medical expenses. Smith contends the fact of permanent injury was really not seriously contested. We agree that there was substantial competent evidence to support a finding of permanent injury and little was presented to refute the contention. It is also clear that Fisher made no effort to prevent the jury from considering the question of noneconomic damages without a finding of permanent injury. But we must determine whether the failure to get a jury finding on the issue of permanent injury hopelessly compromises the award of noneconomic damages and requires a retrial on the issue.

Under these facts, had Fisher asked for an instruction on the threshold issue and been denied, we would be dealing with a very

difficult decision. However, the situation here appears more akin to leading or luring the trial court into error and then complaining of the result. See *Hawkinson v. Bennett*, 265 Kan. 564, 590, 962 P.2d 455 (1998); *Boucher v. Roberts*, 187 Kan. 675, Syl. ¶¶ 1, 2, 359 P.2d 830 (1961).

We do not know why instructions were not given on the threshold issue of permanent injury. Perhaps it eluded attention because there is not yet a PIK instruction on it. In any event, although the evidence in favor of permanent injury was not overwhelming, it was substantial. Admittedly, while the verdict is not a ringing endorsement of the contention that there was permanent injury, neither does it foreclose that possibility.

Since Fisher allowed the issue to go to the jury in the form she now complains of, we are loath to grant a new trial on the issue. As that incomparable judicial wordsmith Justice John Fontron noted in *State v. Earsery*, 199 Kan. 208, 213, 428 P.2d 794 (1967): "It is probable that no experience is more frustrating to a court than the retrial of somebody's lawsuit. The sensation is somewhat akin to dining on yesterday's cold mashed potatoes."

In a civil matter such as this, basing a request for a new trial on the failure to give an instruction that was not requested must be viewed with some skepticism. A resolution of the question must be based on the needs of justice and the individual facts of the case.

In the instant case, Fisher allowed the issue of damages to go to the jury without requesting an instruction on the threshold issue. There was substantial competent evidence to support a finding of permanent injury. It does not appear that a request was made for a new trial on the basis that the instructions were fatally flawed. The trial court, which had the best opportunity to gauge the proceedings, obviously saw no miscarriage of justice occurring. The trial court was not requested to make a judgment on the issue. We find, on these facts, that a reversal and retrial are not called for.

Affirmed.