(921 P.2d 249)

No. 73,255

DANA BATES, *Appellant*, v. CLINTON HOGG, *Appellee*.

Opinion filed August 2, 1996.

*Dennis L. Phelps*, of Wichita, for appellant.

*C. A. Beier* and *Jay F. Fowler*, of Foulston & Siefkin, of Wichita, for appellee.

Before RULON, P.J., GERNON, J., and TIMOTHY E. BRAZIL, District Judge, assigned.

GERNON, J.: Plaintiff Dana Bates appeals the trial court's order prohibiting her from presenting evidence on the full value of her medical expenses and limiting the evidence at trial to the actual amounts paid. Bates also appeals the court's ruling limiting the testimony of one of her expert witnesses and the court's order eliminating the jury award for noneconomic damages.

Defendant Clinton Hogg and Bates were involved in an injury accident in January 1992. Hogg's pickup truck, traveling at approximately 40 miles per hour, struck Bates' vehicle from behind.

Prior to trial, Hogg filed a motion in limine to limit Bates' evidence of economic damages to the amounts actually paid by Medicaid on her behalf. Hogg sought to prevent Bates from introducing evidence concerning the market value or list price of the services she received. The trial court granted the motion.

At trial, Bates presented medical evidence of her injuries. Included in her claim for damages were damages for a shoulder injury she claimed resulted from the accident. She testified that she initially only complained of pain in her neck, back, collarbone, and ankle. However, several months after the accident, her shoulder began popping out of joint. She eventually was diagnosed with a glenoid humeral tear and had to have two different surgeries on the shoulder. She has a scar on her right shoulder and has reduced range of motion due to the injury and surgery.

Hogg claimed that the shoulder injury was not caused by the accident. He attempted to discredit Bates' claim that the wreck caused the shoulder injury by pointing out that she did not complain about her shoulder until 4 months after the accident.

A jury returned a verdict, finding Hogg 100% at fault and awarding Bates $1,305.23 in medical expenses, $0 for future medical expenses, $3,310 in noneconomic loss to date, and $0 in future noneconomic loss.

After trial, the court found Bates had not met the $2,000 threshold for economic damages required by K.S.A. 40-3117 and eliminated the noneconomic damages, thus leaving total damages awarded to Bates of $1,305.23.

### Limiting Evidence of Economic Damages

The first issue on appeal concerns the prohibition by the trial

court of a presentation by Bates of the full value, or market value, of the medical treatment she received as a result of the accident and limiting her to presenting evidence of what Medicaid actually paid on her behalf after the statutory write-off or charge-down. She contends that the court's limitation is a violation of the Kansas collateral source rule.

The question, simply stated, is whether an injured plaintiff can include, in a claim for economic damages, amounts that have been written off by the health care provider in conjunction with a Medicaid contract. This is a question of first impression in Kansas.

Both sides agree that whether evidence of such amounts is admissible for a determination of economic damages is a question of law. Therefore, this court's scope of review is unlimited. See *State v. Donlay*, 253 Kan. 132, 134, 853 P.2d 680 (1993).

"When determining a question of law, this court is not bound by the decision of the district court." *Memorial Hospital Ass'n, Inc. v. Knutson*, 239 Kan. 663, 668, 722 P.2d 1093 (1986).

"[T]he purpose of awarding damages is to make a party whole by restoring that party to the position he [or she] was in prior to the injury." *Samsel v. Wheeler Transport Services, Inc.*, 246 Kan. 336, 352, 789 P.2d 541 (1990), *overruled in part on other grounds* 248 Kan. 824, 844, 811 P.2d 1176 (1991).

Generally, damages in a personal injury case are divided into economic and noneconomic damages.

"Economic damages include the cost of medical care, past and future, and related benefits, *i.e.*, lost wages, loss of earning capacity, and other such losses. Noneconomic losses include claims for pain and suffering, mental anguish, injury and disfigurement not affecting earning capacity, and losses which cannot be easily expressed in dollars and cents." 246 Kan. at 352.

The issue presented only involves economic damages, specifically medical expenses.

The fundamental principle of the law of damages is that a person who suffers personal injuries because of the negligence of another is entitled to recover the reasonable value of medical care and expenses for the treatment of his or her injuries, as well as the cost of those reasonably certain to be incurred in the future. 22 Am. Jur. 2d, Damages § 197, p. 169.

The question then becomes: What role does the collateral source rule play in the damage action before this court?

"The collateral source rule is generally recognized at common law. The rule is that benefits received by the plaintiff from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer." *Masterson v. Boliden-Allis, Inc.*, 19 Kan. App. 2d 23, 27, 865 P.2d 1031 (1993).

" 'The collateral source rule permits an injured party to recover full compensatory damages from a tortfeasor irrespective of the payment of any element of those damages by a source independent of the tortfeasor. The rule also precludes admission of evidence of benefits paid by a collateral source, except where such evidence clearly carries probative value on an issue not inherently related to measurement of damages.' 3 Minzer, Nates, Kimball, Axelrod and Goldstein, Damages in Tort Actions § 17.00, p. 17-5 (1984)." *Wentling v. Medical Anesthesia Services*, 237 Kan. 503, 515, 701 P.2d 939 (1985).

Clearly, benefits paid to a health care provider on behalf of an injured plaintiff are benefits from a collateral source. However, should the measure of benefits be limited to the amount actually paid or required to be paid?

It is our conclusion that the collateral source rule is not applicable under these circumstances. Nothing in the reasoning underlying the collateral source rule supports Bates' position on this issue.

Presently, a medical provider, by agreement and contract, may not charge Medicaid patients for the difference between their customary charge and the amount paid by Medicaid. Therefore, the amount allowed by Medicaid becomes the amount due and is the "customary charge" under the circumstances we have before us. See K.A.R. 30-5-59(e) (1993 Supp.).

In *Evanston Hosp. v. Hauck*, 1 F.3d 540 (7th Cir. 1993), *cert. denied* 127 L. Ed. 2d 215, 114 S. Ct. 921 (1994), the hospital accepted $113,424 from Medicaid as payment in full of a $270,760.24 bill. When the patient received a $9.6 million personal injury award, the hospital attempted to return the payment and recover the former amount due. The Seventh Circuit stated:

"The hospital's acceptance of the money from Medicaid was conditioned on the understanding that it would be payment in full—whatever claims the hospital

might have had against Hauck were relinquished to [the Illinois Medicaid agency].
. . .

"Under Illinois law, when Medicaid pays money to a hospital on behalf of an individual, it 'shall constitute payment in full for the goods or services covered thereby. Acceptance of the payment by or on behalf of the vendor . . . shall bar [the vendor] from obtaining, or attempting to obtain, additional payment therefor from the recipient or any other person.' " *Hauck*, 1 F.3d at 542 (quoting Ill. Comp. Stat. ch. 305, 5/11-1 [1991]).

Other cases have reached similar results. See *Rybicki v. Hartley*, 792 F.2d 260 (1st Cir. 1986); *Holle v. Moline Public Hosp.*, 598 F. Supp. 1017 (C.D. Ill. 1984).

Under the facts before us, we agree with a statement made by a federal court in North Carolina, which stated in a similar case: "It would be unconscionable to permit the taxpayers to bear the expense of providing free medical care to a person and then allow that person to recover damages for medical services from a tortfeasor and pocket the windfall." *Gordon v. Forsythe County Hospital Authority, Inc.*, 409 F. Supp. 708, 719 (M.D.N.C. 1976).

### Constitutionality

Bates next argues that the trial court's ruling, and now this court's ruling, on the Medicaid issue violates the equal protection provisions of the United States and the Kansas Constitutions.

As a threshold matter, for Bates to prevail on this issue, she must show that she is being treated differently from similarly situated individuals. This she cannot do.

Under this court's ruling on the Medicaid issue, Bates is being treated no differently from any other injured person attempting to recover damages in Kansas. Therefore, her argument fails on this issue.

### Directed Verdict

This issue is moot, since the jury found Hogg 100% at fault.

### Expert Witness

Bates next argues the trial court abused its discretion by prohibiting Dr. Philip Mills from testifying as to her permanent impairment rating because the doctor had failed to provide his opinion concerning the rating prior to trial.

Both parties agree that the standard of review is abuse of discretion. See *Marshall v. Mayflower Transit, Inc.*, 249 Kan. 620, Syl. ¶ 8, 822 P.2d 591 (1991).

The record shows that Dr. Mills was about to testify as to his opinion of Bates' permanent impairment rating. Hogg objected to the opinion on the basis that the doctor's report provided during discovery did not contain such an opinion and had stated that a rating was premature. Hogg argues that K.S.A. 60-226(b) supports the district court's ruling.

K.S.A. 60-226(b) covers discovery facts known and opinions held by experts prior to trial. The statute reads in relevant part:

"(4) *Trial preparation: Experts.* Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subsection (b)(1) and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

(A) (i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subsection (b)(4)(C), concerning fees and expenses as the court may deem appropriate.

. . . .

"(e) *Supplementation of responses.* A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement the party's response to include information thereafter acquired, except as follows:

(1) A party is under a duty seasonably to supplement the party's response with respect to any question directly addressed to (A) the identity and location of persons having knowledge of discoverable matters, and (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which the party is expected to testify and the substance of the party's testimony.

(2) A party is under a duty seasonably to amend a prior response if the party obtains information upon the basis of which (A) the party knows that the response was incorrect when made, or (B) the party knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

(3) A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior responses."

We conclude it was error not to allow Dr. Mills to testify as to Bates' impairment rating. However, we find it was harmless error, since Bates produced evidence of the same impairment rating through the testimony of Dr. Jay Jones.

"Harmless error is error which does not prejudice the substantial rights of a party. It affords no basis for a reversal of a judgment and must be disregarded." *Hagedorn v. Stormont-Vail Regional Med. Center*, 238 Kan. 691, 701, 715 P.2d 2 (1986).

## Reduction of Jury Award

Bates argues the court erred in finding that she did not meet the threshold requirement of K.S.A. 40-3117 because there were less than $2,000 in economic damages. She argues the evidence showed there was significant disfigurement and permanent injury and, therefore, she has met the statute's requirements.

Hogg claims that the jury's verdict matches the amount of damages that Bates claimed for expenses which were not related to her shoulder and, therefore, the court was correct because the only permanent disfigurement was to her shoulder.

The jury found Hogg at fault and awarded Bates medical expenses of $1,305.23 and noneconomic loses of $3,310. According to the trial court, the medical expense award coincided with only the expenses not associated with Bates' shoulder injury.

The jury instructions directed the jury to determine the amount of damages sustained by Bates. Instruction No. 9 instructed the jury that it should consider:

"a. Pain, suffering, disabilities, or disfigurement, and any accompanying mental anguish suffered by plaintiff to date and those plaintiff is reasonably expected to experience in the future;

"b. The reasonable expenses of necessary medical care, hospitalization and treatment received and reasonable expenses of necessary medical care, hospitalization and treatment reasonably expected to be needed in the future."

Our reading of the record and the jury's award here leads us to conclude that the trial court was correct in eliminating the noneconomic damages.

Bates agrees that any permanent injury or disfigurement was associated with her shoulder problems. The problem with the non-

economic damage award is that, by whatever figures are used, the jury awarded Bates only damages for medical expenses not associated with the shoulder injury.

Finding no reversible error, we affirm.

RULON, J., dissenting: I dissent from the result reached here for two reasons.

First, a plaintiff is entitled to recover for the reasonable value of medical services rendered to treat an injury as long as there is proof the services were necessary. 2 Minzer, Nates, Kimball, Axelrod, and Goldstein, Damages in Tort Actions § 9.10, p. 9-8 (1991). The reasonable value of necessary medical treatment is recoverable even though such charges have not been paid. "[T]he actual payment of medical expenses is not necessary in order to recover for their reasonable value. It is sufficient to show that the services have been rendered, and that the plaintiff or some other party has therefore become liable for the amount claimed." 2 Minzer, Nates, Kimball, Axelrod and Goldstein, Damages in Tort Actions § 9.40, p. 9-36 (1991). However, a plaintiff's recovery for medical expenses, nursing care and other *out of pocket* expenses is limited to the reasonable value of these services. "The reasonable value of the services is generally [defined as] the reasonable charges of the profession for those services, and not the usual charges of the particular physician or surgeon." 2 Minzer, Nates, Kimball, Axelrod, and Goldstein, Damages in Tort Actions, § 9.20, p. 9-14 (1991).

The purpose of the collateral source rule is to prevent a wrongdoer from escaping from full liability for the consequences of his or her negligence. 2 Minzer, Nates, Kimball, Axelrod, and Goldstein, Damages in Tort Actions § 9.60, p. 9-88 (1991).

"Thus, if the basic goal of tort law is only that of compensating plaintiff for his [or her] losses, evidence of these benefits should be admitted to reduce the total damages assessed against the defendant. At the same time, reducing recovery by the amount of the benefits received by the plaintiff would be, according to most courts, granting a 'windfall' to the defendant by allowing him [or her] a credit for the reasonable value of those benefits. Such a credit would result in the benefits being effectively directed to the tortfeasor and from the intended party—the injured plaintiff. If there must be a windfall, it is usually considered more just that the injured person should profit, rather than let the wrongdoer be relieved of full

responsibility for his [or her] wrongdoing." 22 Am. Jur. 2d, Damages § 566, p. 638.

Concerning services provided gratuitously:

"It does not seem reasonable that a tortfeasor should be permitted to profit by any gratuity extended to his [or her] victim. Thus, as a general rule, the fact that the plaintiff received gratuitous medical care, continued salary or wage payments, proceeds from insurance policies, or welfare and pension benefits will not be taken into account in computing damages." 22 Am. Jur. 2d, Damages § 570, p. 641.

"The collateral sources rule generally permits an injured person to recover full damages without regard to benefits paid by Social Security and its subsidiary Medicare and Medicaid programs. Social Security and Medicare benefits have been likened to payments under private insurance plans, since they will ordinarily have been at least partially financed by contributions from the recipients in the form of employee taxes. Similarly, Medicaid has been described as a system of social insurance, although in operation it more closely resembles a system of public welfare under which benefits do not depend on contributions." 3 Minzer, Nates, Kimball, Axelrod and Goldstein, Damages in Tort Actions § 17.23, pp. 17-89-93 (1991).

While the plaintiff can only recover the reasonable value of the medical services provided, there is no requirement in Kansas that it be shown that any amount was actually paid. Were it otherwise, there is no way an injured party could recover damages for services provided gratuitously by family members or charity. See *Lewark v. Parkinson*, 73 Kan. 553, 85 Pac. 601 (1906).

Second, I am convinced the district court erred in finding plaintiff did not meet the threshold requirements of K.S.A. 40-3117.

K.S.A. 40-3117 reads in relevant part:

"In any action for tort brought against the owner, operator or occupant of a motor vehicle or against any person legally responsible for the acts or omissions of such owner, operator or occupant, a plaintiff may recover damages in tort for pain, suffering, mental anguish, inconvenience and other non-pecuniary loss because of injury only in the event the injury requires medical treatment of a kind described in this act as medical benefits, having a reasonable value of $2,000 or more, or the injury consists in whole or in part of permanent disfigurement, a fracture to a weight-bearing bone, a compound, comminuted, displaced or compressed fracture, loss of a body member, permanent injury within reasonable medical probability, permanent loss of a bodily function or death. Any person who is entitled to receive free medical and surgical benefits shall be deemed in compliance with the requirements of this section upon a showing that the medical treatment received has an equivalent value of at least $2,000. Any person receiving

ordinary and necessary services, normally performed by a nurse, from a relative or a member of such person's household shall be entitled to include the reasonable value of such services in meeting the requirements of this section. For the purpose of this section, the charges actually made for medical treatment expenses shall not be conclusive as to their reasonable value. Evidence that the reasonable value thereof was an amount different from the amount actually charged shall be admissible in all actions to which this subsection applies."

The problem with the majority opinion is that the jury verdict form did not differentiate between shoulder and non-shoulder damages. Additionally, there was evidence in the record from both medical experts that plaintiff was permanently injured by virtue of her shoulder injury, and there was evidence of permanent disfigurement. Therefore, while the amount of damages awarded by the jury does give credence to the court's findings, it cannot be said as a matter of law that plaintiff failed to meet the statutory requirements of K.S.A. 40-3117. While it is possible for the trial court to rule, as a matter of law, that there has been no serious permanent injury or disfigurement where the injury is very slight, in a close case such question should be left to the jury. See *Stang v. Caragianis*, 243 Kan. 249, 258, 757 P.2d 279 (1988). In this case, because there was uncontroverted evidence that plaintiff had been seriously and permanently injured, the court should not have speculated on what the jury was thinking when computing the damages.

I would remand the cause for a new trial on damages.