579 S.E.2d 293

Jody Lee HASELDEN, as Personal Representative of the Estate of Carolyn H. Hill, deceased, Respondent,

v.

S. Perry DAVIS, M.D., Petitioner.

No. 25613.

Supreme Court of South Carolina.

Heard April 2, 2002.
Decided March 24, 2003.

Charles E. Hill and Teresa A. Arnold, both of Turner, Padget, Graham & Laney, of Columbia, for Petitioner.

Larry C. Brandt and Leslie Jay Shayne, of Walhalla, for Respondent.

Gray T. Culbreath, of Collins & Lacy, of Columbia, for Amicus Curiae South Carolina Defense Trial Attorneys Association.

George R. Burnett, of Columbia, for Amicus Curiae The South Carolina Department of Health and Human Services.

Justice WALLER.

We granted a writ of certiorari to review the Court of Appeals' opinion in *Haselden v. Davis*, 341 S.C. 486, 534 S.E.2d 295 (Ct.App.2000). We affirm.

## FACTS

These are wrongful death and survival actions brought by the estate of Carolyn Hill (Hill), who died of breast cancer in 1994. The complaints alleged her treating physician, Petition-

er S. Perry Davis, M.D. (Davis), was negligent in failing to timely read a suspicious mammogram, which had been performed on Hill in November 1991. As a result, Hill's breast cancer was not diagnosed until June 1993, by which time it had metastasized into her lymph nodes.[1]

At trial, the court allowed introduction of $77,905.21 in medical expenses billed to Hill. Davis argued that only those amounts actually paid by Medicaid should be admitted into evidence, for a total of $24,109.04. The difference between the "billed" amounts and the amounts actually "paid" by Medicaid, totaled $51,620.59. The jury awarded a total of $1,082,103.71 to Hill's statutory beneficiaries and $1,000,000.00 to her estate. The Court of Appeals affirmed.

## ISSUE

Is evidence of amounts billed by a treating physician admissible to establish a medical malpractice plaintiff's damages, where the plaintiff is a Medicaid patient who is not liable for any amounts billed in excess of the amount paid by Medicaid?

## DISCUSSION

 Davis argues the trial court should have limited Hill's recovery for medical expenses to those amounts actually paid by Medicaid. We disagree. We find both the amount of the Medicaid payment and the amount billed by Doctor Davis were admissible [2] to establish the amount of Hill's damages.[3]

---

1. A more detailed recitation of the facts is set forth in the Court of Appeals' opinion.

2. It is unclear, from footnote 25 of the Court of Appeals' opinion, whether the amount of Medicaid payments was placed before the jury. *Haselden*, 341 S.C. at 507, 534 S.E.2d at 306, n. 25. As we read the colloquy between the trial court and counsel, the court appears to have ruled that the amounts paid by Medicaid were admissible, but that they did not, under the collateral source rule, reduce the defendants' liability. ROA pp. 215–217. Indeed, the trial court instructed the jury that it could not consider any compensation received by the plaintiff from a third party to lessen the defendants' liability.

3. We concur with Hill that the collateral source rule applies to Medicaid payments. *See e.g., Davis v. Management & Training Corp. Centers,*

 A plaintiff in a personal injury action seeking damages for the cost of medical services provided to him as a result of a tortfeasor's wrongdoing is entitled to recover the reasonable value of those medical services, not necessarily the amount paid. 22 Am.Jur.2d *Damages*, § 198 (1988). Although the amount paid may be relevant in determining the reasonable value of those services, the trier of fact must look to a variety of other factors in making such a finding. Among those factors to be considered by the jury are the amount billed to the plaintiff, and the relative market value of those services. *Kashner v. Geisinger Clinic*, 432 Pa.Super. 361, 638 A.2d 980 (1994). Clearly, the amount actually paid for medical services does not alone determine the reasonable value of those medical services. Nor does it limit the finder of fact in making such a determination. *Id., citing* D. Dobbs, *Handbook on the Law of Remedies* § 8.1, at 543 (1973) ("The measure of recovery is not the cost of services . . . but their reasonable value. . . . [R]ecovery does not depend on whether there is any bill at all, and the tortfeasor is liable for the value of medical services even if they are given without charge, since it is their value and not their cost that counts."); Restatement (Second) of Torts § 924 comment f (1979) ("The value of medical services made necessary by the tort can ordinarily be recovered although they have created no liability or expense to injured person, as when a physician donates his services."). *See also Ellsworth v. Schelbrock*, 235 Wis.2d 678, 611 N.W.2d 764 (2000)(noting that test is the reasonable value, not the actual charge).

---

2001 WL 709380 (D.Kan. May 30, 2001); *Williamson v. Odyssey House, Inc.*, 2000 DNH 238, 2000 WL 1745101 (D.N.H. November 3, 2000); *Chapman v. Mazda Motor of America*, 7 F.Supp.2d 1123 (D.Mont.1998); *McAmis v. Wallace*, 980 F.Supp. 181 (W.D.Va.1997); *Bates v. Hogg*, 22 Kan.App.2d 702, 921 P.2d 249, 252 (1996); *Brandon HMA, Inc. v. Bradshaw*, 809 So.2d 611, 2001 WL 1198984 (Miss. Oct.11, 2001); *Cates v. Wilson*, 321 N.C. 1, 361 S.E.2d 734 (1987); *Ellsworth v. Schelbrock*, 235 Wis.2d 678, 611 N.W.2d 764 (2000). Since it is a "wholly independent" collateral source, Hill's damages are not limited by the amounts paid by Medicaid. However, simply because Hill's damages are not limited by the amount of Medicaid payments received, it does not follow that the only admissible evidence as to amount of her damages was the amount she was billed by Davis. We note that in cases in which evidence of Medicaid payments is admissible, a plaintiff is entitled to a limiting instruction that such payments may not be used to limit recovery.

We are cognizant that several courts hold that the amount paid by Medicaid (or similar programs) is dispositive of the reasonable value of medical services. *See e.g. Moorhead v. Crozer Chester Medical Center,* 564 Pa. 156, 765 A.2d 786 (2001); *Hanif v. Housing Authority,* 200 Cal.App.3d 635, 246 Cal.Rptr. 192 (1988); *Bates v. Hogg,* 22 Kan.App.2d 702, 921 P.2d 249, 252 (1996). The basis for these cases appears to be that to allow a plaintiff to claim the billed amount, as opposed to the paid amount, would result in a windfall.

However, to hold that the plaintiff is limited to damages in the amount actually paid by Medicaid is contrary to the purposes behind the collateral source rule and would result in a windfall to the defendant tortfeasor. In our view, a defendant physician who agrees to become a Medicaid provider, thereby agreeing to accept as compensation for medical services those amounts set forth in the Medicaid agreement, who thereafter bills a Medicaid patient for the full value of his services, may not claim that the true, reasonable value of those services is the lesser amount paid by Medicaid. Accordingly, we hold the amount billed by Davis was relevant to establish the reasonable value of the services provided to Hill.[4]

Accordingly, the Court of Appeals' opinion is affirmed.

**AFFIRMED.**

TOAL, C.J., and MOORE, J., concur. BURNETT, J., dissenting in a separate opinion in which PLEICONES, J., concurs.

Justice BURNETT:

I am in complete agreement that the reasonable value of medical services is a jury issue and that Medicaid is a collateral source. I disagree that the amount of billed medical services which is not paid by Medicaid ($51,620.59) is recoverable as compensatory damages. Medicaid's unique characteristics and the law of damages require finding only the amount paid by Medicaid is recoverable as compensatory damages.

---

4. Our holding is criticized by the dissent as "requir[ing] doctors to bear the cost of reimbursing an injured party for a non-existent debt." On the contrary, we simply hold that the reasonable value of the medical services is for the jury's determination.

The collateral source rule prohibits the reduction of compensation received by an injured party by compensation received from a source wholly independent of the wrongdoer. *In re W.B. Easton Const. Co., Inc.,* 320 S.C. 90, 92, 463 S.E.2d 317, 318 (1995). Courts applying the collateral source rule reason "a negligent defendant is not entitled to enjoy the fruits of fortuitous circumstances, employer generosity, or diligent effort on the part of the injured plaintiff" to reduce the tortfeasor's liability. *Steeves v. United States,* 294 F.Supp. 446, 457 (D.S.C.1968). I agree Medicaid is a collateral source because it is compensation expended on the injured party's behalf from a source wholly independent of the wrongdoer.

Having concluded Medicaid payments are a collateral source does not end our inquiry. While the collateral source rule applies to "compensation received" by the plaintiff, the rule itself does not address whether the "amount billed" or the "amount paid" is the amount of "compensation received" subject to the rule. *See In re W.B. Easton Const. Co., Inc., supra; see also Bates v. Hogg,* 22 Kan.App.2d 702, 921 P.2d 249, 252 (1996). The question whether the collateral source rule applies to the billed amount or the paid amount is the central issue of this appeal. The answer to that question is provided by law of damages **not** the collateral source rule.

The majority of courts to consider this issue have concluded the collateral source rule applies only to the amount paid by Medicaid. *See, e.g., McAmis v. Wallace,* 980 F.Supp. 181 (W.D.Va.1997); *Hanif v. Housing Authority,* 200 Cal.App.3d 635, 246 Cal.Rptr. 192 (1988); *Bates v. Hogg, supra; but see Ellsworth v. Schelbrock,* 235 Wis.2d 678, 611 N.W.2d 764 (2000) (holding the plaintiff may recover the amount billed to Medicaid).

The majority of courts to consider this issue predicate their holdings on the central tenet of compensatory damages: awards are intended to make an injured person whole by placing him in the position enjoyed prior to the injury and no more. *See Kapuschinsky v. United States,* 259 F.Supp. 1, 6 (D.S.C.1966); *Hutchison v. Town of Summerville,* 66 S.C. 442, 45 S.E. 8 (1903); 22 Am.Jur.2d *Damages* §§ 26, 27 (1988); 11 S.C. Jurisprudence *Damages* § 2, 3 (1992). Allowing a plain-

tiff to recover for the amount billed to Medicaid does injury to this principle of law.

The Medicaid program provides individuals with medical treatment by doctors who agree to accept such patients in exchange for payment at a predetermined rate schedule. The patient not only receives medical care, but also incurs no liability for the cost of the care once the doctor accepts payment. The difference between the amount billed and the amount paid, the amount in issue in this case, is "phantom" money in that no one has paid the amount and no one will incur a debt for the amount.

What distinguishes Medicaid from traditional insurance programs and, even its Medicare counterpart, is, the recipients, who fall below a certain income level to be eligible, do not pay to receive the benefit. While the care of the impoverished is an admirable social policy goal, in terms of the law of damages, the Medicaid patient receives a windfall based on a loss not personally incurred. The question is "whether the 'reasonable value' measure of recovery means that an injured plaintiff may recover from the tortfeasor more than the actual amount he paid or for which he incurred liability for past medical care and services." *Hanif,* 246 Cal.Rptr. at 194–95. Stated another way, should a plaintiff be entitled to claim and should a defendant be subject to liability for this "phantom" money.

Because the plaintiff has never paid nor will ever be liable for the written-off difference between the billed and paid amount, it is "unconscionable to permit the taxpayers to bear the expense of providing free medical care to a person and then allow that person to recover damages for medical services from a tort-feasor and pocket the windfall." *Bates,* 921 P.2d at 253 (*quoting Gordon v. Forsyth County Hospital Authority, Inc.,* 409 F.Supp. 708, 719 (M.D.N.C.1976)). This case is "not a situation where [p]laintiff avoided personally paying a bill because a collateral source stepped in . . . no one paid the written-off amount and as a result . . . [p]laintiff has not incurred this fee." *McAmis,* 980 F.Supp. at 184.

The amount Medicaid pays is a collateral source to benefit a plaintiff who has a right to recover that amount. The excess between the amount billed to and the amount paid by Medic-

aid, for which a plaintiff is no longer liable, is not protected by the rule. It is not reasonable, under principles of compensatory damage law, to allow Plaintiff to receive a windfall in damages of amounts for which no entity is liable.[5]

The majority opinion predicates its definition of compensatory medical damages on the legal fiction that the billed amount, which no one incurred as a debt, can be a reasonable amount of damages. This Court has created a right to a compensatory remedy for a debt which never has nor ever will exist. In sum, this Court's opinion may be interpreted as a plaintiff's right to be reimbursed for money that will never be expended.

Because the majority desires to require doctors to bear the cost of reimbursing an injured party for a non-existent debt, I dissent.

PLEICONES, J., concurs.

---

**5.** I would limit this Court's holding to Medicaid because of its unique attributes without deciding whether an individual who has purchased medical insurance and paid premiums, through a private insurer or the Medicare system, should be allowed to introduce evidence of write-offs which may be a part of the benefit of their bargain. *Compare Strahley v. Mercy Health Center of Manhattan,* 2000 WL 1745291 (D.Kan.2000) (excluding evidence of medical expenses written off due to a contract between a health care provider and private insurance carrier) *with Acuar v. Letourneau,* 260 Va. 180, 531 S.E.2d 316 (2000) (allowing evidence of medical expenses written off pursuant to a contractual agreement between private insurance company and medical provider).