603 S.E.2d 587

**E'Van FRAZIER, Respondent,**

v.

**Athaniel BADGER, Jr., Petitioner.**

No. 25876.

Supreme Court of South Carolina.

Heard Jan. 6, 2004.

Decided Sept. 27, 2004.

---

1. S.C. Const. art. V, § 4.

98

Andrea E. White, of Duff, Turner, White and Boykin, LLC, and Andrew F. Lindemann, of Davidson, Morrison and Lindemann, P.A., both of Columbia, for Petitioner.

Lawrence Keitt, of Keitt and Associates, of Orangeburg, for Respondent.

Chief Justice TOAL:

This review stems from an action by E'Van Frazier ("Frazier") against Athaniel Badger, Jr. ("Badger") for the tort of outrage. The jury awarded Frazier $400,000 in actual damages and $400,000 in punitive damages. The trial judge reduced the award to $200,000 in actual damages and $200,000 in punitive damages. The Court of Appeals affirmed in an unpublished opinion. *Frazier v. Badger*, Op. No.2002–UP–513 (Ct.App., filed August 20, 2002). We granted certiorari and affirm the Court of Appeals.

### FACTUAL/PROCEDURAL BACKGROUND

During the 1995–96 school year, Frazier was employed to supervise the in-school suspension lab at Clark Middle School. At that time, Badger was the assistant principal of Clark Middle School and was Frazier's direct supervisor. Around the beginning of the school year, Badger began visiting Frazier's classroom and making explicit, sexual advances towards her. When Frazier refused Badger's propositions, he told her that eventually he was going to "break her." As the school year progressed, Badger's visits became more frequent, and his advances became physical. Frazier testified that Badger would grab her legs and breasts and that she had to "fight him off" of her on several occasions.

As part of Badger's duties as assistant principal, he received requests for building repairs. Frazier repeatedly asked Badger to send someone to repair the heating and air conditioning in her classroom. Despite Badger's promises, the heating and air conditioning were never repaired.

At the end of the school year, Badger told Frazier that if she came back to work in the fall, he would move her class into a portion of the basement known as the "dungeon."

As a result of Badger's behavior, Frazier suffered emotionally and physically. She became severely depressed. Her weight plummeted below 100 pounds, and she began having anxiety attacks and losing her hair. Her physician referred her to a psychiatrist who proscribed her medication for depression and insomnia. Frazier also testified that her fiancé left her because of her emotional condition.

On August 1, 1996, Frazier wrote Priscilla Robinson ("Robinson"), Principal of Clark Middle School, about Badger's conduct, which led to a meeting between Robinson, Badger, and Frazier. After the meeting, Robinson wrote Frazier a letter acknowledging that Badger had admitted to and apologized for making inappropriate comments. She also wrote in her letter that it appeared that Badger had submitted work orders for the heating and air conditioning.

Frazier wrote Robinson another letter because she was dissatisfied with the investigation. As a result, District Superintendent, Dr. Walter Tobin assigned three people to investigate the matter further. The investigators found that (1) Badger made inappropriate comments to Frazier; (2) Badger sent Frazier's requests to the maintenance department, requesting that the heating and air conditioning be repaired, but the units were not repaired in a timely manner; and (3) Robinson, not Badger, decided to move Frazier into the "dungeon."

At the beginning of the next school year, Frazier's class was relocated to the basement, and she was told that her old classroom would be used for a computer lab.[1] Robinson also told Frazier that until her downstairs classroom was ready for use, her classroom would be located on the cafeteria stage.

---

1. The school never transformed Frazier's original classroom into a computer lab.

This temporary location made Frazier's job increasingly difficult. Though the stage curtains were drawn, Frazier had a hard time keeping the students in class. It was only after Frazier filed a complaint with the Department of Human Affairs that Frazier was given a regular classroom.

At trial, Badger testified that he was Frazier's basketball coach fifteen years ago, and that their relationship was "playful." He admitted to making inappropriate remarks and inviting her to dinner, but he denied making sexually explicit comments or grabbing her. He also testified that he did not recall refusing to process any work orders to repair the heating and air conditioning in Frazier's classroom. Finally, he denied that he ever threatened to relocate Frazier's classroom to the basement.

The jury found that Badger's sexual advances towards Frazier, combined with his retaliatory conduct, met the elements for the tort of outrage. The Court of Appeals affirmed the trial court's ruling in an unpublished opinion. *Frazier v. Badger*, Op. No.2002–UP–513 (Ct.App., filed August 20, 2002). Badger now presents the following issues for review on certiorari:

I. **Did the Court of Appeals err in affirming the trial court's refusal to charge the jury on the law of tort immunity for government employees?**

II. **Did the Court of Appeals err in affirming the trial court's denial of the motion for mistrial?**

III. **Did the Court of Appeals err in affirming the trial court's ruling that Frazier was not barred from bringing an outrage action in lieu of an action for sexual harassment?**

IV. **Did the Court of Appeals err in affirming the trial court's refusal to submit special interrogatories to the jury?**

V. **Did the Court of Appeals err in affirming the punitive damages award?**

## LAW/ANALYSIS

### I. GOVERNMENTAL IMMUNITY

■ Badger argues that he is immune from tort actions stemming from conduct within the scope of his official duties

pursuant to South Carolina Code Ann. section 15–78–70 (Supp. 2003),[2] and therefore the trial court abused its discretion when it refused to charge the jury on the law concerning immunity. We disagree.

South Carolina Code Ann. section 15–78–70 specifically provides that government employees may be liable in tort actions:

(a) This chapter constitutes the exclusive remedy for any tort committed by an employee of a governmental entity. An employee of a governmental entity who commits a tort while acting within the *scope of his official duty* is not liable therefor except as expressly provided for in subsection (b).

(b) Nothing in this chapter may be construed to give an employee of a governmental entity immunity from suit and liability if it is proved that the employee's conduct was not within the *scope of his official duties* or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude.

. . .

(Emphasis added).

■ Immunity under the statute is an affirmative defense that must be proved by the defendant at trial. *Tanner v. Florence City–County Bldg. Comm'n,* 333 S.C. 549, 552, 511 S.E.2d 369, 371 (Ct.App.1999).

■ The trial judge is required to charge only the current and correct law of South Carolina. *Cohens v. Atkins,* 333 S.C. 345, 509 S.E.2d 286 (Ct.App.1998). The law to be charged to the jury is determined by the evidence at trial. *State v. Hill,* 315 S.C. 260, 262, 433 S.E.2d 848, 849 (1993). In reviewing jury charges for error, appellate courts must consider the charge as a whole in light of the evidence and issues presented at trial. *Keaton ex rel. Foster v. Greenville Hosp. Sys.,* 334 S.C. 488, 497, 514 S.E.2d 570, 574 (1999).

---

**2.** Section 15–78–70 is a provision within the South Carolina Tort Claims Act titled, "Liability for act of government employee; requirement that agency or political subdivision be named party defendant; effect of judgment or settlement."

■ This Court has held that the term "scope of employ-
ment" as used in an insurance policy is broader than the term
"scope of official duties" as used in the Tort Claims Act. *South
Carolina State Budget and Control Bd. v. Prince*, 304 S.C.
241, 245, 403 S.E.2d 643, 646 (1991). If "scope of employ-
ment" is a broader term than "scope of official duties"—the
term used in the governmental immunity statute—it follows
that acts not within the "scope of employment" are not within
the "scope of official duties."

■ We recognize that whether an act is within the "scope
of employment" may be determined by implication from the
circumstances of a particular case. *Hamilton v. Miller*, 301
S.C. 45, 48, 389 S.E.2d 652, 653 (1990); *Wade v. Berkeley
County*, 330 S.C. 311, 319, 498 S.E.2d 684, 688 (Ct.App.1998).
In *Prince*, we held that the course of someone's employment
requires some "act in furtherance of the employer's business."
304 S.C. at 246, 403 S.E.2d at 647.

Our jurisprudence includes three cases that consider wheth-
er sexual advances were within the "scope of an employee's
employment." Because the cases did not relate to governmen-
tal immunity, the court of appeals declined to apply them.
Nonetheless, we find that "scope of employment" is a term of
art, and therefore we look to the cases involving insurance
policies for guidance.

In the first case, this Court held that a police officer's sexual
assaults of women during traffic stops were not within the
scope of his official duties, and therefore the acts were not
covered under the state's general tort liability policy. *Doe v.
South Carolina State Budget and Control Bd.*, 337 S.C. 294,
523 S.E.2d 457 (1999). In the second case, the court of
appeals held that a professor was not acting within the scope
of his employment when he sexually harassed a student.
Therefore, the professor's conduct was not covered under the
university's liability insurance policy. *Padgett v. South Car-
olina Ins. Reserve Fund*, 340 S.C. 250, 253, 531 S.E.2d 305,
307 (Ct.App.2000). In the third case, the court of appeals held
that a sheriff's sexual advances toward three of his female
officers was not within the scope of the sheriff's official duties.
*Loadholt v. S.C. State Budget and Control Bd.*, 339 S.C. 165,
528 S.E.2d 670 (Ct.App.2000).

According to these cases, sexual harassment by a government employee is not within the employee's "scope of employment." Therefore, in the present case, we hold that Badger's sexual advances toward Frazier were outside the scope of his official duties or employment.

The more difficult question is whether Badger's *retaliatory conduct* was within the scope of his official duties or employment. Under the particular circumstances of this case, we find no evidence that any of Badger's retaliatory conduct was done in furtherance of his employer's business. This is not to say that a jury charge on the law of governmental immunity is inappropriate in every case where allegations are made against a governmental official for retaliatory conduct. What a plaintiff may call "retaliatory conduct" may be justified by some independent employer interest, warranting a charge on governmental immunity. We find Badger's moving Frazier's class to the school's stage and basement furthered none of the school's legitimate interests because Frazier's old classroom was left unused. In addition, none of the school's legitimate interests were furthered by Badger's failure to repair Frazier's air and heating unit or Badger's repeated threats to fire Frazier.

We find that Badger's retaliatory conduct was a continuation of his improper sexual advances toward Frazier and was a product of personal, not occupational, motives. The principle of governmental immunity is not intended to protect a defendant such as Badger who has used his authority for nothing more than to personally retaliate against an employee. In addition, section 15–78–70(b) denies governmental immunity for defendants whose actions involve actual malice and an intent to harm. We find that Badger's retaliatory conduct involved actual malice and an intention to harm Frazier.

Accordingly, we hold that the trial judge did not err in rejecting Badger's request to charge the jury on the defense of governmental immunity because the evidence did not support such a charge.

## II. Motion For Mistrial

At pretrial, the trial judge granted a motion in limine excluding evidence of Badger's alleged attempted rape of

Frazier approximately fifteen years ago. At trial, Badger testified that he and Frazier had a "playful" relationship when he coached her in basketball. When Frazier took the stand, she testified that Badger began making sexual advances toward her when he was her high school basketball coach. Badger argues that this evidence was inadmissible, and thus the trial judge should have granted his motion for mistrial. We disagree.

A litigant cannot complain of prejudice by reason of an issue he has placed before the court. *See State v. Brown*, 344 S.C. 70, 543 S.E.2d 552 (2001) (petitioner cannot complain of prejudice from evidence he has brought before the jury); *State v. Robinson*, 305 S.C. 469, 409 S.E.2d 404 (1991) (a party will be unsuccessful in opposing the admission of evidence if that party was the one who opened the door).

Whether a motion for mistrial should be granted is within the trial judge's sound discretion, and the trial judges ruling will not be disturbed unless an abuse of discretion is shown. *Tucker v. Reynolds*, 268 S.C. 330, 334, 233 S.E.2d 402, 404 (1977).

Badger, not Frazier, first testified that he and Frazier had a "playful" relationship when he was her basketball coach. Once Badger introduced the nature of the relationship, he opened the door, allowing Frazier to testify as to her perspective of the past relationship. According to *Brown*, Frazier's testimony was admissible and non-prejudicial since Badger himself introduced the matter. Therefore, we find that Badger's motion for mistrial was properly denied.

### III. OUTRAGE IN LIEU OF SEXUAL HARASSMENT

Badger argues that Frazier should have brought a claim against Badger for sexual harassment, not the tort of outrage, citing *Todd v. South Carolina Farm Bureau Mut. Ins. Co.*, 283 S.C. 155, 175, 321 S.E.2d 602, 613 (Ct.App.1984), *quashed on other grounds*, 287 S.C. 190, 336 S.E.2d 472 (1985), in which this Court held: "[t]he tort of outrage was designed not as a replacement for the existing tort actions. Rather, it was conceived as a remedy for tortious conduct where no remedy previously existed."

We recognize that Frazier had a statutory right to file a civil rights complaint against Badger for sexual harassment. However, because this is a right created by statute and not the common law of torts, we find no reason to restrict Frazier's right to sue Badger based upon the common law tort of outrage.

## IV. Special Interrogatories

■ Badger argues that the Court of Appeals erred in affirming the trial judge's denial of his request to submit special interrogatories to the jury. We disagree.

■ The trial judge has the discretion to determine whether to submit special interrogatories. Rule 49(b) SCRCP; *Constant v. Spartanburg Steel Products, Inc.*, 316 S.C. 86, 90, 447 S.E.2d 194, 196 (1994). To warrant a reversal, a party must show that he was prejudiced by the trial court's refusal to submit special interrogatories. *Steele v. Dillard*, 327 S.C. 340, 343, 486 S.E.2d 278, 279–80 (Ct.App.1997). In *Anderson v. West*, this Court held "that where a jury returns a general verdict involving two or more issues and its verdict is supported as to at least one issue, the verdict will not be reversed." 270 S.C. 184, 188, 241 S.E.2d 551, 553 (1978).

Here, Badger requested that the trial judge require the jury to make specific findings of fact as to Frazier's allegations of Badger's sexual misconduct and retaliation. Instead, the trial judge gave a general jury charge on the tort of outrage.

> We agree with the Court of Appeals' analysis on this issue: [t]here was no need to submit special interrogatories to the jury for specific findings of fact, as the two parts of her claim cannot be compartmentalized. As Frazier's only claim before the jury was that of outrage, the jury would have simply found for Badger if the jurors believed the elements of outrage had been met.

*Frazier v. Badger*, Op. No.2002–UP–513, page 6 (Ct.App., filed August 20, 2002).

Badger was unable to show that he suffered prejudice from the trial judge's general jury charge on outrage. Further, we find no reason to believe that the jury misunderstood the trial judge's charge on outrage and recognize the existence of evidence warranting Frazier's recovery on this claim. There-

fore, we hold that the trial judge did not abuse his discretion in denying Badger's request to submit special interrogatories to the jury.

## V. EXCESSIVE PUNITIVE DAMAGES

 Badger argues that the Court of Appeals erred in upholding the jury's punitive damage award because Frazier failed to introduce evidence of Badger's ability to pay, which he argues is the most important factor in a constitutional review of an award of punitive damages. We disagree.

 First, a defendant's inability to pay does not prohibit a jury from awarding punitive damages. In *Gamble v. Stevenson*, this Court established eight factors for a trial court to apply in a post-verdict review of punitive damages. 305 S.C. 104, 111, 406 S.E.2d 350, 354 (1991). The ability of the defendant to pay the punitive damages awarded is only one of eight factors. As part of its holding in *Gamble*, this Court opined, "the trial court shall conduct a **post-trial** review and **may** consider the following ..." *Id.* (emphasis added). The word "may" signifies that the *Gamble* factors are to provide guidance, not "hard and fast" requirements. Further, "post-trial" signifies that the *Gamble* factors are to be applied after a verdict, by the judge, not the jury.

 Second, this Court has consistently held that an award of punitive damages will not be overturned because a defendant is unable to pay. While a defendant's wealth is a relevant factor in assessing punitive damages, it is not necessarily controlling. *Hicks v. Herring*, 246 S.C. 429, 144 S.E.2d 151 (1965). There is "no requirement that the defendant be a man of means before the jury is justified in awarding punitive damages." *Norton v. Ewaskio*, 241 S.C. 557, 565, 129 S.E.2d 517, 521 (1963). A jury may consider a defendant's financial worth in determining the amount of punitive damages to award, but a jury is not required to make this consideration before it may award punitive damages. *Rogers v. Florence Printing Co.*, 233 S.C. 567, 106 S.E.2d 258 (1958).

Third, the United States Supreme Court recently refused to include the defendant's ability to pay in its due process analysis of punitive damages. *State Farm Mut. Ins. Co. v. Campbell*, 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). Instead, the *Campbell* Court held that "the most

important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Id* at 419, 123 S.Ct. at 1521 (citing *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 575, 116 S.Ct. 1589, 1598, 134 L.Ed.2d 809 (1996)).

According to the *Campbell* analysis, the award in this case is constitutional: the award fairly reflects Petitioner's reprehensibility; represents a 1 to 1 ratio to actual damages; and is comparable to punitive damages awards in other cases involving the tort of outrage. *See Campbell,* 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003)(In determining the constitutionality of a punitive damages award, the reviewing court must look to three guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual and potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.)

Therefore, the punitive damages award in this case does not offend Badger's due process.

### CONCLUSION

We **affirm** the ruling of the Court of Appeals, upholding the jury's award of $200,000 actual damages and $200,000 punitive damages for Frazier.

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.