THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING   EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Marolyn L. Baril,       
Respondent,
 
 
 

v.

 
 
 
Aiken Regional Medical Centers,       
Appellant.
 
 
 

Appeal From Aiken County
Alison Renee Lee, Circuit Court Judge

Unpublished Opinion No.  2005-UP-275
Heard March 10, 2005  Filed April 19, 2005

AFFIRMED

 
 
 
Richard J. Morgan, of Columbia, for Appellant.
Herbert W. Louthian, of Columbia, for Respondent.
 
 
 

PER CURIAM:  Marolyn Baril brought this action for breach of an employment contract against Aiken Regional Medical Centers (Hospital).  A jury returned a verdict in favor of Baril, and Hospital appeals.  We affirm.
FACTS
Marolyn Baril, a nurse, brought this action for breach of an alleged employment contract after she was terminated by Hospital in 1999.  In 2001, the circuit court, Judge Rodney A. Peeples then presiding, granted summary judgment to Hospital.  On appeal, we reversed and remanded the matter for trial, concluding there were genuine issues of material fact as to whether Hospitals policies and conduct created an employment contract, whether Hospital terminated Baril with just cause, and whether Baril made reasonable efforts to mitigate her damages.  See Baril v. Aiken Regl Med. Ctrs., 352 S.C. 271, 573 S.E.2d 830 (Ct. App. 2002) (a more detailed recitation of the factual background in this case is contained in the Baril I opinion).[1] 
Upon trial, the jury returned a verdict for Baril in the amount of $210,000.00.  Hospital now appeals this verdict on ten enumerated grounds that can largely be grouped around its assertions that there was no evidence it breached an employment contract, Baril failed to mitigate her damages, and that the trial court failed to properly charge the jury on damages, improperly charged the jury on implied covenants and employer rights, allowed inadmissible evidence, and failed to grant Hospitals post-trial motions.  A review of these issues follows.
LAW/ANALYSIS
I.  Breach of an Employment Contract 
Hospital argues that, even assuming the parties entered into a contractual relationship, it did not breach the alleged agreement.  Hospital asserts an employer is not liable for breach of contract if the employer had a reasonable, good faith belief (even if mistaken) that it had just cause to terminate an employee, and the undisputed evidence in this case is that it was justified in its belief it had cause for termination.  We disagree.
While Hospital does not characterize its argument as the trial court erred in failing to grant either a directed verdict or a judgment notwithstanding the verdict, this is inherent in its position.  
When reviewing the denial of a motion for directed verdict or judgment notwithstanding the verdict, this Court must employ the same standard as the trial courtthat is, we must consider the evidence in the light most favorable to the non-moving party.  Sauers v. Poulin Bros. Homes, Inc., 328 S.C. 601, 605, 493 S.E.2d 503, 504-05 (Ct. App. 1997).  
In ruling on motions for directed verdict and JNOV [judgment notwithstanding the verdict], the trial court is required . . . to deny the motions where either the evidence yields more than one inference or its inference is in doubt.  Jinks v. Richland County, 355 S.C. 341, 345, 585 S.E.2d 281, 283 (2003) (quoting Strange v. South Carolina Dept of Highways & Pub. Transp., 314 S.C. 427, 429-30, 445 S.E.2d 439, 440 (1994)).  
This Court will reverse the trial courts rulings on these motions only where there is no evidence to support the rulings or where the rulings are controlled by an error of law.  Hinkle v. Natl Cas. Ins. Co., 354 S.C. 92, 96, 579 S.E.2d 616, 618 (2003).  When considering the motions, neither this Court nor the trial court has authority to decide credibility issues or to resolve conflicts in the testimony and evidence.  Sauers, 328 S.C. at 605, 493 S.E.2d at 505. 
Hospitals argument is, in essence, that it did not knowingly allow other employees to place long-distance telephone calls through its toll-free line or allow any employee to instruct coworkers to violate a Hospital policy.  Hospital further asserts it had no legal or contractual duty to conduct a more laborious, time-consuming investigation than it conducted to support its decision.  It also points to the fact that ten other employees had been fired over a three-year period for various instances of fraud, theft, or dishonesty.  
In reviewing the record, however, we conclude there was testimony suggesting that Hospital did not have a reasonable, good faith belief for its termination of Baril.  First, Hospital knew of prior tension between Baril and one of her coworkers, Holly Martinez de Andino.  Second, it made the decision to fire Baril before hearing her explanation of the incident.  Third, Barils proffered explanation was reasonable on its face.  Fourth, Hospital never interviewed Beth Pearson, the nurse Baril had initially spoken to before another employee transferred the call, to seek her description of the event.  Fifth, there was testimony that other people had similarly used Hospitals toll-free number.  In this case, Barils call had a nexus to Hospitals work, as she would not have called had she not received the message that Hospital was looking for her.  Considering this and all of the evidence in the light most favorable to Baril, as we are required to do, we conclude the trial court did not err in submitting the case to the jury and in denying the motions for a directed verdict and a judgment notwithstanding the verdict.
II.  Damages 
Hospital next argues that Baril should be barred from any recovery in this action because she failed to mitigate her damages and that the trial court committed error in its instructions on the issues of future and nominal damages.  We disagree.
a.  Mitigation 
In Baril I we stated the rule on mitigation and noted that, generally, it is for a jury to determine whether a party acted reasonably to mitigate damages:

A party injured by the acts of another is required to do those things a person of ordinary prudence would do under the circumstances, but the law does not require him to exert himself unreasonably or incur substantial expense to avoid damages.  Whether the party acted reasonably to mitigate damages is ordinarily a question for the jury.

Baril I, 352 S.C. at 285, 573 S.E.2d at 838 (citation omitted).
At trial, Baril offered several reasons for her failure to seek employment at another hospital immediately after her termination.  First, she explained that she did not want to reveal to potential employers in the medical field that she had been fired, which would impugn her reputation.[2]  Second, she testified that she went to school for an extended period to become a family nurse practitioner.  Third, she would have had to leave her residence in Aiken to find another hospital position.  Fourth, Baril continued in a teaching position at the University of South Carolina at Aiken that she had held before her termination by Hospital and any further employment would have interfered with her teaching schedule.  At the time of this trial in 2003, Baril had resigned her teaching position and accepted full-time employment as a nurse practitioner, but she was laid off from that position prior to trial and was again seeking employment.    
In Baril I we found material issues of fact existed as to whether Baril made reasonable efforts to mitigate her damages; we concluded reasonable minds could disagree, so the issue should be resolved by a jury and not as a matter of law by the court.  Baril I, 352 S.C. at 285, 573 S.E.2d at 838.  
We again conclude the evidence presented issues of fact for determination by a jury as to whether Baril adequately mitigated her damages.  Moreover, we note the trial court correctly charged the jury that a discharged individual is obligated to mitigate damages by accepting available alternative employment of the same or similar character.  The court further stated:  [A] party who claims that damages should have been minimized has the burden of proving that they could have been avoided or reduced, and its up to you, the jury, to determine whether or not the employee has fully mitigated her damages.  Thus, the jury was free to accept or reject the testimony it heard regarding mitigation and to consider Barils actions in determining her damages.  
b.  Future Damages 
Hospital next contends the trial court erred in charging the jury on future damages because no evidence warranted such a charge.  Hospital does not argue the charge as given was not a correct statement of the law; rather, it reasserts its mitigation argument, asserting Baril was not entitled to future damages because she did not seek employment for two years.    
Our supreme court has made it clear that future damages are recoverable in actions for wrongful termination:  A wrongfully discharged employee suing for breach of contract is entitled to receive the amount of the employees net losses caused by the employers breach.  Such losses may include back pay as well as future damages. 
Small v. Springs Indus., Inc., 300 S.C. 481, 484, 388 S.E.2d 808, 810 (1990) (citations omitted).  
Under current South Carolina law, the standard of admissibility for evidence of future damages is any evidence which tends to establish the nature, character, and extent of injuries which are the natural and proximate consequences of the defendants acts . . . if otherwise competent. 
Pearson v. Bridges, 344 S.C. 366, 372, 544 S.E.2d 617, 620 (2001) (quoting Martin v. Mobley, 253 S.C. 103, 109, 169 S.E.2d 278, 281-82 (1969)).  
In the case before us, the trial court charged the jury according to current law.  We can find no error warranting reversal in this regard, especially in light of the fact that we have determined the court did not err in its rulings on the issue of mitigation.
c.  Nominal Damages 
Hospital also contends the trial court erred in refusing its request to charge the jury on nominal damages. 
The law to be charged to the jury is determined by the evidence at trial.  Frazier v. Badger, 361 S.C. 94, 101, 603 S.E.2d 587, 590 (2004).  In reviewing jury charges for error, appellate courts must consider the charge as a whole in light of the evidence and issues presented at trial.  Id.
Because we reject Hospitals argument that Baril failed, as a matter of law, to mitigate damages and find Baril did introduce evidence of a loss of income, we conclude a charge on nominal damages is not supported by the facts of the case.  See Cleveland v. Bryant, 16 S.C. 634, 635 (1882) (It is only in cases destitute of facts that the judge is warranted in charging [on nominal damages] as requested here.  A judge may err in acceding to requests of the kind made in this case, but he will seldom err in refusing them; certainly, in such refusals as to matters of fact he should be safe from reversal by this court.).
III.  Implied Covenant of Good Faith and Fair Dealing  
Hospital next argues the trial court erred in allowing Baril to seek recovery for breach of the implied covenant of good faith and fair dealing because she never pled this cause of action.  We disagree.
Our recent decision in RoTec Services, Inc. v. Encompass Services, Inc., 359 S.C. 467, 472-73, 597 S.E.2d 881, 884 (Ct. App. 2004) makes it clear that the implied covenant of good faith and fair dealing is not an independent cause of action, but is an implied term in every contract that is subsumed in a claim for breach of contract.  Thus, Baril was not required to plead breach of the implied covenant as a separate claim.
IV.  Employers Rights  
Hospital contends the trial court erred in refusing to charge the jury on employers rights.  We disagree.
Hospital specifically asserts:  The Trial Courts refusal to charge the jury on the rights of employers prejudiced [it], as it had the unfettered right to determine the level and severity of its employees misconduct.  The Trial Court erroneously deprived the jury of this legal standard . . . .  
One example of Hospitals proposed jury charges on employers rights is as follows:

Employers enjoy the latitude and autonomy to make whatever business decisions they desire and to establish and enforce whatever policies and procedures that they deem appropriate.
Employers, and not employees, have the right to determine the level of severity of an employees misconduct and to apply [its] policies accordingly.  

Along these lines, Hospital also proposed charges related to Barils duty of loyalty, such as employees must, at all times, abide by and follow their employers instructions and policies . . . even if the employee considers those instructions and policies harsh and severe.  Another one instructed that if an employee is disloyal, he or she can forfeit the right to notice or a lesser disciplinary action and could be barred from receiving damages.    
In reviewing jury charges for error, appellate courts must consider the charge as a whole in light of the evidence and issues presented at trial.  Frazier v. Badger, 361 S.C. 94, 101, 603 S.E.2d 587, 590 (2004).  If the instructions of the trial court, construed as a whole, correctly state the law, there is no reversible error.  Brown v. Stewart, 348 S.C. 33, 53, 557 S.E.2d 676, 686 (Ct. App. 2001).  To entitle an appellant to reversal, the trial courts instructions must be not only erroneous, but also prejudicial, and the enumeration of hypercritical exceptions will not suffice to overthrow a jurys verdict.  Id.
We have reviewed Hospitals proposed charges and find no error in the trial courts instructions to the jury.  We conclude the trial courts instructions fairly set forth the law and we discern no prejudice to Hospital.  In the first instance, the charges regarding an employers unfettered right to set policy is a broad generalization that is not applicable here.  We further conclude the charges related to Barils duty of loyalty are factually inappropriate to this case.
V.  Evidence 
Hospital alleges the trial court erred in allowing certain testimony about its disciplinary policy and employees use of Hospitals toll-free number.  We disagree.
a.  Statements Regarding the Disciplinary Policy  
Hospital argues the trial court erred in allowing testimony that Richard Lowe, Hospitals Director of Human Resources, told Baril that Hospital policies, particularly the progressive disciplinary policy, would prevent her from being targeted for termination.  
Hospital argues this evidence should have been excluded because Baril never alleged an oral contract and this evidence violated the parol evidence rule by allowing extrinsic evidence regarding a promise of fairness.  Contrary to Hospitals assertion, we do not regard this evidence as an attempt to demonstrate an oral contract.  Rather, it was meant to reveal Hospitals own understanding and intent with regard to its employment handbook.  Thus, we find no error in this regard.
b.  Use of Toll-Free Number 
Hospital also argues the trial court should not have allowed testimony of other employees use of Hospitals toll-free number because Baril did not demonstrate Hospital management ever allowed employees to use the toll-free number in such a manner.  
Baril presented evidence that although she was terminated for using the toll-free line for personal use, she had actually used it for the business purpose of responding to a call placed by Hospital.  Baril had also contended Hospital did not have a published policy on the use of the toll-free number and that no one had ever been fired based on alleged misuse of the number.  Baril presented the evidence of other employees use of the toll-free number to demonstrate other employees did not regard this as a Hospital policy.  We find no abuse of discretion in the trial courts admission of this testimony.  See Gamble v. Intl Paper Realty Corp., 323 S.C. 367, 474 S.E.2d 438 (1996) (stating the admission or exclusion of evidence rests in the sound discretion of the trial judge, whose decision will not be reversed on appeal absent an abuse of discretion).
VI.  Post-Trial Motions 
Finally, Hospital asserts the trial court should have granted its motion for a remittitur or exercised its power under the thirteenth juror doctrine to grant a new trial.  We disagree.
In its motion to alter or amend the judgment, Hospital maintained the evidence indicated Baril suffered either no damages or only nominal damages and [c]ertainly, there should be no future damages.  Alternatively, Hospital argues its motion for a new trial nisi remittitur should have been granted and Barils damages should be reduced for the two years she did not specifically pursue employment in another hospital setting.  As to its request for a new trial absolute under the thirteenth juror doctrine, Hospital contended the jurys questions regarding whether it was to determine if Baril were treated fairly indicate the jury did not understand the trial courts instructions; therefore, the trial court should have granted a new trial under the thirteenth juror doctrine.  
On appeal, this court presumes the jury awarded an amount of damages within its discretion and it views all the evidence and the inferences reasonably deducible therefrom in the light most favorable to sustaining the verdict.  Howle v. PYA/Monarch, Inc., 288 S.C. 586, 601, 344 S.E.2d 157, 165 (Ct. App. 1986).  The denial of a motion for a new trial nisi is within the trial judges discretion and will not be reversed on appeal absent an abuse of discretion.  ONeal v. Bowles, 314 S.C. 525, 527, 431 S.E.2d 555, 556 (1993).  [O]n appeal of the denial of a motion for a new trial nisi, this Court will reverse when the verdict is grossly inadequate or excessive requiring the granting of a new trial absolute. 
Id.
Unlike a motion for directed verdict, the trial judge weighs the evidence under the thirteenth juror doctrine and need not view it in the light most favorable to the opposing party.  McEntire v. Mooregard Exterminating Servs., Inc., 353 S.C. 629, 633, 578 S.E.2d 746, 748 (Ct. App. 2003).  Moreover, the question of whether to grant a new trial upon the facts is one addressed to the discretion of the trial judge.  Id.  In reviewing the denial of a motion for a new trial under the thirteenth juror doctrine, we consider only whether there is any evidence to support the trial courts decision.  Haselden v. Davis, 341 S.C. 486, 506, 534 S.E.2d 295, 306 (Ct. App. 2000), affd, 353 S.C. 481, 579 S.E.2d 293 (2003).  To reverse such a denial, we must find the moving party was entitled to a directed verdict at trial.  Id.  
Hospitals remittitur argument essentially reiterates its previous arguments regarding mitigation.  We have previously determined that mitigation was properly submitted to the jury.  We, therefore, find no error in the trial courts refusal to grant a new trial nisi remittitur.  We likewise find there is evidence to support the trial courts decision to deny a new trial under the thirteenth juror doctrine as there was sufficient evidence to present a jury question in this case.
CONCLUSION
For the foregoing reasons, the judgment below is 
AFFIRMED.
GOOLSBY, HUFF, and STILWELL, JJ., concur.

[1]  Hospital terminated Baril in 1999 after she reportedly used Hospitals toll-free line to make a personal call while she was on vacation in Washington state.  Hospital found the call violated its written policy HR116 prohibiting [d]ishonesty, fraud, theft (regardless of amount), [or] unauthorized removal of hospital property, each of which constituted a critical offense warranting immediate termination.     
Barils explanation was that she called Hospital on the toll-free line after receiving a message from her sister that Hospital was looking for her.  When Baril finished speaking to Hospitals staff, she asked to be transferred to her sister to follow up. According to Hospitals phone bill, Baril spoke to her sister for about .32 of a minute, or about twenty seconds.  Baril told her sister that she had received the message and that she had confirmed that Hospital knew she was on vacation, so nothing further was needed.    
Baril offered to pay for the call, but Hospital refused to accept payment.  There is no evidence in the record as to any monetary loss suffered by Hospital for the call.  Baril believed the true cause of her termination was not the call, but that another employee, Holly Martinez de Andino, had targeted her for termination.  
[2]  Baril did, however, work at several part-time positions as a nurse practitioner that did not require her to reveal her separation from Hospital.  For example, she worked at a clinic and also with a physician who already knew her.